**Janice Delores BAIRD,
Petitioner/Appellant,**

v.

**Harry Lanning BAIRD,
Respondent/Respondent.**

No. 61609.

Missouri Court of Appeals,
Eastern District,
Northern Division.

Dec. 15, 1992.

Daniel J. Pingelton, Columbia, for petitioner/appellant.

Christine Carpenter, Sapp, Woods, Orr, Bley, Carpenter & Eng, Columbia, for respondent/respondent.

CRANE, Judge.

Mother appeals those portions of an order of the trial court denying her interest on certain delinquent child support payments and dismissing her application for a Qualified Domestic Relations Order (QDRO). We modify the judgment by entering an award of interest in the amount of $11,588.94 on the ground that under § 454.520 RSMo 1986, mother is entitled to interest on all delinquent child support payments. We reverse the dismissal of mother's application for a QDRO and remand for further proceedings because the trial court erroneously declared the law by concluding that a QDRO would result in an unlawful modification of the property division portions of the original divorce decree.

Janice Delores Baird (mother) and Harry Lanning Baird (father) were divorced in April 1979. The initial dissolution decree awarded mother the custody of the parties' two minor children. Father was ordered to pay $100 monthly maintenance and $160 monthly child support. In December 1980, father's child support obligation was increased to $190 per month.

Subsequently, mother filed a motion for contempt against father for failure to comply with the 1980 modified decree. The motion was heard on May 23, 1984, and, on the same day, the court placed on the record "Tentative Findings and Order." This "Tentative Order" restated a verbal agreement, presented to the court by counsel for the parties, which reduced monthly child support to $125 per child and increased monthly maintenance to $125.

Mother then filed a "Motion to Construe the Tentative Findings and Order as a Nullity." After a hearing, the circuit court found the May 23, 1984 "Tentative Order" to be a binding and enforceable order. Mother appealed. We dismissed the appeal, holding that the trial court's ruling was a nullity and did not transform the 1984 "Tentative Order" into a final judgment. *Baird v. Baird,* 804 S.W.2d 836, 838 (Mo.App.1991). We suggested that the more prudent course of action would have been for the mother to enforce the 1980 judgment. *Id.* From May 23, 1984, the date of the "Tentative Order," through March 5, 1991, the date of the court of appeals decision, father made payments in accordance with the "Tentative Order," and not in accordance with the 1980 judgment.

On October 3, 1991, mother sought to enforce the 1980 judgment by requesting the court to enter a QDRO for past due maintenance and child support. Father moved to quash mother's application for a QDRO and requested a hearing.

After an evidentiary hearing, the trial court issued "Findings of Fact, Conclusions of Law and Order." The court found that father had been awarded his retirement account as his share of marital property and child support payments had not been ordered paid from this account. The court further found that father had been making child support payments from May 23, 1984 through March 5, 1991 in reliance on the

"Tentative Order." The court concluded that 1) any qualified domestic relations order entered subsequent to the original decree would constitute an unlawful modification of the property division provisions under § 452.330 RSMo 1986 and 2) in the interest of equity, father should not be charged interest on delinquent support payments during the period of May 23, 1984 through March 5, 1991. The court determined father to be in arrears for child support payments totalling $11,234.91 in principal and $1,187.50 in interest. Mother appeals from this judgment.

■ For her first point, mother asserts the trial court erroneously declared and applied the law as set out in § 454.520 RSMo 1986, which requires a court to charge interest on all delinquent child support and maintenance payments. This section provides:

1. *All delinquent child support* and maintenance *payments* which have accrued based upon judgments or orders of courts of this state entered prior to September 29, 1979, *shall draw interest* at a rate

. . . . .

(emphasis added). The court awarded $1,187.50 in interest on delinquent support from March 5, 1991, the date of the court of appeals decision, through the date of the hearing on the enforcement action. However, the court refused to award interest on the delinquent payments from the period May 24, 1984, the date of the "Tentative Order," until March 5, 1991. If interest had been awarded on those payments, the total interest award would have been $11,588.94.

■ We agree that the trial court erred. Even though father made reduced child support payments in good faith and in reliance upon what he understood to be a valid court order, the trial court had no discretion to decline to award interest on all delinquent child support payments. Section 454.520 requires that all delinquent child support payments "shall draw interest." The use of the word "shall" in a statute indicates that an action is mandatory and not discretionary or permissive.

*Missouri Soc'y of Am. College v. Roderick,* 797 S.W.2d 521, 524 (Mo.App.1990). An award of interest compensates an individual for the use of or loss of the use of money. *Laughlin v. Boatmen's Nat'l Bank of St. Louis,* 189 S.W.2d 974, 979 (Mo.1945). Where a statute provides that interest "shall" be paid or received, a court has no discretion to refuse to award interest as directed by the statute. *Denton Const. Co. v. Missouri State Highway Comm'n,* 454 S.W.2d 44, 59–60 (Mo.1970).

*Kessinger v. Kessinger,* 829 S.W.2d 658 (Mo.App.1992), cited by father, does not call for a different result. In *Kessinger* we held that the trial court did not abuse its discretion in making a *set-off* against interest owed. *Id.* at 662. We did not hold that a trial court had discretion to refuse an award of interest on the full amount of the delinquent child support.

Father also argues that § 408.040 RSMo (Cum.Supp.1991), which governs interest rates on past due judgments and is written in mandatory language, had been interpreted to not apply where the party does not know the amount due on a judgment, citing *Fohn v. Title Ins. Corp. of St. Louis,* 529 S.W.2d 1, 5 (Mo.1975). *Fohn* applies to prejudgment interest on an unliquidated claim and is inapplicable to a post-judgment child support case. Child support cases decided under § 408.040 before § 454.520 was effective hold that a trial court is required to award interest on the full amount of child support determined by the court to be in arrears. *Buttrey v. Buttrey,* 622 S.W.2d 708, 710 (Mo.App.1981); *Sheets v. Sheets,* 632 S.W.2d 80, 82 (Mo.App.1982). Under § 408.040, statutory interest is due from the date of judgment. *Reimers v. Frank B. Connet Lumber Co.,* 273 S.W.2d 348, 349 (Mo.1954) (interest due from date of original judgment even though trial court granted motion for new trial that subsequently was reversed on appeal).

The trial court misapplied the law by refusing to award interest on all delinquent child support payments. Under Rule 84.14, we will enter the order the trial court should have entered by modifying the order and awarding interest on the delin-

quent child support payments in the amount of $11,588.94.

For her second point mother contends the trial court erroneously declared the law in dismissing her application for a QDRO on the ground that issuing a QDRO would result in an unlawful modification of the property division portions of the original decree which awarded the pension plan to father. Mother asserts that state and federal law permit a QDRO to be used to enforce a delinquent child support judgment. We agree.

The Employee Retirement Income Security Act of 1974 (ERISA) was enacted to protect pension plan participants and their beneficiaries. *Smith v. Mirman*, 749 F.2d 181, 182 (4th Cir.1984). To secure the financial well-being of employees and their dependents, ERISA contains a spendthrift provision which prevents assignment or alienation of pension plan benefits. 29 U.S.C.A. § 1056(d)(1) (Supp.1992). However, federal courts became divided on the question of whether dependents, including former spouses, could alienate pension benefits to satisfy family support obligations. *See American Tel. & Tel. Co. v. Merry*, 592 F.2d 118, 121–25 (2d Cir.1979). In response, in 1984 Congress carved out an exception to the spendthrift provision by passing the Retirement Equity Act, which amended ERISA to permit a pension plan participant to alienate or assign benefits, but only under a QDRO. 29 U.S.C.A. § 1056(d)(3)(A) (Supp.1992) (effective Jan. 1, 1985).

ERISA sets out specific requirements which a domestic relations order must meet in order to be considered a QDRO. First, a QDRO must be a domestic relations order, which is a judgment, decree or order concerning child support or maintenance payments to a child or former spouse which is issued pursuant to a state's domestic relations law. 29 U.S.C.A. § 1056(d)(3)(B)(ii) (Supp.1992). Second, a QDRO must clearly specify 1) the names and addresses of the participant and the alternate payee covered by the order, 2) the amount or percentage of the participant's benefits to be paid by the plan to the alternate payee, 3) the num-

ber of payments or the period covered by the order, and 4) the pension plan covered by the order. 29 U.S.C.A. § 1056(d)(3)(C) (Supp.1992). Finally, a QDRO must not require a pension plan 1) to provide any type or form of benefit, or any option, not otherwise provided under the plan, 2) to provide increased benefits or 3) to pay benefits to an alternative payee under an order previously determined to be a QDRO. 29 U.S.C.A. § 1056(d)(3)(D) (Supp.1992).

Even if a domestic relations order requires a type or form of benefit not provided for under the plan, it will still qualify as a QDRO where the order requires benefits to be paid to an alternative payee 1) after the participant reaches the earliest retirement age (in cases where the participant has not yet retired), 2) as if the participant had retired on the date such payment is to begin under the order (taking into account the current value of accrued benefits) and 3) in any form in which benefits may be paid under the plan. 29 U.S.C.A. § 1056(d)(3)(E)(i) (Supp.1992). The term "earliest retirement age" includes anytime after the participant reaches age 50. 29 U.S.C.A. § 1056(d)(3)(E)(ii)(II) (Supp.1992).

Mother's proposed QDRO satisfies these statutory guidelines. It is an order seeking collection of a state court judgment against father for delinquent child support payments owed to father's children and for delinquent maintenance payments owed to his former spouse. The proposed QDRO sets out mother's name and address, father's name and address, and the amount requested. It states that the amount is to be paid in a single lump-sum disbursement and describes father's pension plan. Mother does not ask for increased benefits or ask for benefits payable to someone else under a prior QDRO. Mother requests a lump-sum distribution from the plan's current value and asserts that father is over 50 years of age.

The trial court rejected mother's QDRO on the theory that under § 452.330.5 RSMo (Cum.Supp.1989) any QDRO entered subsequent to the original decree would constitute an unlawful modification of the original property division. This conclusion is

erroneous. Mother is not seeking to redivide marital property, but is instead attempting to collect a judgment for delinquent maintenance and child support payments.

Section 452.140 RSMo 1986 allows a spouse to attach or execute against any of the debtor spouse's property to enforce a decree for maintenance or child support. Property awarded a spouse pursuant to a division of marital property enjoys no special exemption from attachment or execution. Once a judgment is rendered, the prevailing party may garnish any property in the hands of a third party. Rule 90.01–.02; § 525.010 RSMo 1986. A pension plan qualifies as property against which a judgment for maintenance or support may be enforced through execution or garnishment. *Hopkins v. Hopkins*, 626 S.W.2d 389, 393 (Mo.App.1981). ERISA permits QDRO's to be used to enforce an earlier entered support judgment and collect delinquent maintenance and child support payments against a pension fund. *Rohrbeck v. Rohrbeck*, 318 Md. 28, 566 A.2d 767, 774 (1989).

The trial court erroneously declared the law in finding that mother could not garnish father's pension as a means of enforcing her judgment for delinquent maintenance and child support payments. Mother was entitled to garnish property in the hands of any third party. Her proposed QDRO satisfied ERISA's requirements. The trial court erred in refusing to issue a QDRO which would assign pension benefits to satisfy her judgment on the ground the QDRO constituted an unlawful modification of the original property division. We reverse the portion of the order dismissing mother's application for a QDRO and remand for further proceedings on the application for a QDRO.

That portion of the judgment of the trial court awarding interest is modified to show an award of interest in the amount of $11,588.94. That portion of the judgment of the trial court sustaining the motion to dismiss mother's application for a QDRO and denying the same is reversed. The case is remanded for further proceedings on the application for a QDRO.

CRIST, P.J., and AHRENS, J., concur.