**Deborah Jo SEAL, Respondent,**

v.

**Ronald Keith RAW, Appellant.**

**No. WD 53777.**

Missouri Court of Appeals,
Western District.

Nov. 4, 1997.

David Holdsworth, Liberty, for Appellant.

William Shull, Jr., Liberty, for Respondent.

SPINDEN, Judge.

Ronald Keith Raw appeals the circuit court's judgment ordering the entry of a Qualified Domestic Relations Order (QDRO) eight years after the court entered its marriage dissolution decree. The QDRO affected payment of pension benefits to Raw's former wife, Deborah Jo Seal, pursuant to a property settlement contained in the parties' marriage dissolution decree. Raw contends that the circuit court did not have jurisdiction to enter the QDRO. We disagree and affirm the circuit court's judgment.

The circuit court dissolved Raw's and Seal's marriage on March 30, 1988. The couple agreed on distribution of their property, and the circuit court incorporated their agreement into its decree. The couple agreed that Seal would receive a share of Raw's "retirement/pension/annuity" plan from Raw's employer, Colgate Palmolive Company, and she had an option of receiving $600 a month or a sum set by a formula. Colgate Palmolive terminated Raw's employment in October 1993, but it continued giving him his regular salary through July 1994. He became eligible to receive benefits from the firm's pension plan in August 1994.

In April 1994, Seal asked the circuit court to enter a QDRO to protect her interest in the pension benefits. Raw signed the QDRO, and the circuit court entered it on May 2, 1994. On May 23, 1994, the pension plan's administrator told Seal that the QDRO was not qualified. On September 12, 1994, Raw asked the circuit court to set aside the QDRO's entry, and Raw and Seal stipulated to the circuit court's setting aside the QDRO on March 14, 1996.

In the meantime, Raw filed for bankruptcy on December 22, 1994, and asked the bankruptcy court to discharge the pension obligation to Seal. On May 2, 1995, the bankruptcy court ruled that the circuit court's dissolution decree established Seal's interest in the pension benefits and that Raw could not discharge the obligation because Seal had a "constructive trust" in the pension benefits and an equitable interest in a right to obtain a QDRO. On December 13, 1996, at Seal's request, the circuit court entered a new QDRO which has been accepted by the pension plan's administrator.

Raw appeals on three points. In all three, he challenges the circuit court's jurisdiction to enter the QDRO.

■ In his first point, Raw contends that because he and Seal agreed to a property settlement which addressed the division of pension benefits to Seal but did not provide for entry of a QDRO, the circuit court did not have jurisdiction to enter the QDRO. This is so, Raw claims, because § 452.325.2, RSMo 1994, mandates that an agreement concerning property settlement is binding on the court unless the court finds that the agreement is "unconscionable." Raw also contends that the agreement's language shows that he and Seal intended for the pension

benefit to be paid to Seal through Raw—not directly by the pension plan.

Although § 452.325.2 does provide that an agreement concerning property settlement is binding on the court so long as it is not unconscionable, the General Assembly has added a qualifier to the statute. Section 452.325.5 also says, "Terms of the agreement set forth in the decree are enforceable by all remedies available for the enforcement of a judgment[.]"

Entry of a QDRO constitutes enforcement of a domestic relations order. A QDRO "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a participant plan[.]" 29 U.S.C. § 1056(d)(3)(B)(i)(I) (Supp.1997). Congress has defined a domestic relations order as:

> [A]ny judgment, decree, or order (including approval of a property settlement agreement) which—
>
> (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and
>
> (II) is made pursuant to a State domestic relations law (including a community property law).

29 U.S.C. § 1056(d)(3)(B)(ii) (Supp.1997). The circuit court's decree, therefore, was a domestic relations order. The circuit court's entry of the QDRO recognized and enforced Seal's rights created by the decree. The property settlement's not mentioning a QDRO did not preclude the circuit court's later use of a QDRO to enforce its decree.

■ We also disagree with Raw's contention that the decree's language indicated that Seal was to receive her share of the pension benefits directly from him. The decree said:

> [Seal's] share of the sums payable [from the pension plan] shall be due to her immediately if, as and when same are paid from the said plan to [Raw], a survivor or other designee, and without regard to the binding effect of this Agreement upon [Raw's] employer, the said plan administrator or other person or entity other than [Raw].

Raw interprets this to mean that "if, as and when" benefits were actually paid by the plan to Raw, Seal would have to look to him for payment of her share. The circuit court could not, he argues, enter a QDRO.

■ The normal rules of contract construction govern the interpretation of property settlement agreements. A central tenet of contract construction is that "the court must consider the whole instrument and the natural and ordinary meaning of the language." *Blackman v. Blackman,* 767 S.W.2d 54, 59 (Mo.App.1989).

The decree meant that Seal was to receive her portion of the pension benefits when Raw became eligible under the plan to receive them and that she was entitled to those benefits directly from Raw should the property settlement not be binding on the plan administrator to disburse those sums directly to her. This is supported by other language in the property settlement which says, "[Raw] hereby agrees to sign any and all documents on behalf of [Seal] with [Raw's] employer, Colgate Palmolive Company, to [e]nsure that [Seal] shall receive the benefits as set forth hereinabove." Raw and Seal obviously contemplated that Raw's employer would be involved in the distribution of the pension benefits.

Moreover, the common purpose for the phrase "if, as and when" in dissolution decrees has been to avoid the pitfalls in the contingent nature of pension vesting and of lump sum distributions. *Kuchta v. Kuchta,* 636 S.W.2d 663, 665–66 (Mo. banc 1982). Enactment of the Retirement Equity Act of 1984 created an "alternative procedure," a QDRO, for dividing pension benefits. *May v. May,* 801 S.W.2d 728, 735 (Mo.App.1990).

In *May,* a pensioner made the reverse of Raw's argument: Because the decree referred to a QDRO but did not state "if, as and when," the decree was unenforceable. *Id.* The court held that "the 'if, as and when' language . . . is unnecessary when the benefits are to be paid pursuant to a QDRO[.]" *Id.* at 736.

In 29 U.S.C. § 1056(d)(3)(A), Congress authorized the creation of a QDRO to avoid the general prohibition against the assignment or

alienation of pension benefits. When a domestic relations order is qualified pursuant to subsections (B), (C), (D), and (E) of the statute, a circuit court may use a QDRO to enforce a nonplan participant's right to "child support, alimony payments, or marital property rights" previously granted by "any judgment, decree, or order (including approval of a property settlement agreement)." 29 U.S.C. § 1056(d)(3)(B)(ii) (Supp.1997).

We find no statutory mandate that a circuit court is restricted to dividing person benefits in a decree by one method or the other. Either method is sufficient, and neither is exclusionary. We, therefore, disagree with Raw's contention that the "if, as and when" language mandated payment to Seal through Raw or that it precluded the use of a QDRO to enforce the distribution of pension benefits granted in a decree.

■ In his second point, Raw contends that by entering the QDRO, the circuit court modified his and Seal's property settlement which did not provide for entry of a QDRO. This, he argues, violated § 452.330.5's prohibition against modification of orders distributing marital property.[1]

This court's Eastern District rejected a similar argument in *Baird v. Baird*, 843 S.W.2d 388, 391–92 (Mo.App.1992). In that case, a mother sought to collect past-due child support payments through a QDRO entered against the father's pension benefits which had been awarded entirely to the father in the dissolution decree. *Id.* at 389. The father contended that entry of a QDRO would constitute an "unlawful modification" of the original property division. *Id.* The *Baird* court disagreed. It said, "Mother is not seeking to redivide marital property, but is instead attempting to collect a judgment for delinquent maintenance and child support payments." *Id.* at 392.

Seal is not seeking to redivide marital property. She is seeking a QDRO to enforce her rights to receive her share of Raw's retirement benefits granted by the decree. We deny Raw's second point.

In his third point, Raw contends that the QDRO violates § 452.330.5 by altering three terms of the dissolution decree. We disagree.

He first claims that the numerator in the formula fraction in the pension benefits calculation incorrectly cited 19 as the number of years he was married to Seal. The property settlement incorporated into the circuit court's decree, however, also cited 19 as the numerator in the formula fraction. This could not have constituted a modification or deviation from the decree.

■ Raw also points to two other terms in the property settlement which he contends the QDRO modified: (1) "in the event of [Seal's] death, her entitlement herein under shall survive and be enforceable by her estate," and (2) that "any such sums payable on her behalf shall be paid in equal shares to the parties' living children." The QDRO said:

Except to the extent allowed under the optional form of benefit selected by the Alternate Payee [Seal] or otherwise required by this Order, the Alternate Payee may not designate a beneficiary to receive any benefits under the Retirement Plan after the Alternate Payee's death after benefit commencement, the form of benefit required under this Order (or selected by the Alternate Payee) shall determine whether any amounts are owed to any beneficiary upon the Alternate Payee's death.

Although the QDRO made payment to a beneficiary after Seal's death dependent on the form of benefit available under the pension plan, Raw has not contended that this variation prejudices him in any way or gives Seal additional benefits not agreed to in the property settlement. Raw contends only that the variation modifies the property settlement and that this voids the QDRO's entry. We disagree.

The circuit court entered the QDRO to enforce division of pension benefits as grant-

1. Section 452.330.5 says, "The court's order as it affects distribution of marital property shall be a final order not subject to modification; provided, however, that orders intended to be qualified domestic relations orders affecting pension, profit sharing and stock bonus plans pursuant to the U.S. Internal Revenue Code shall be modifiable only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of order."

ed to Seal in the decree. When a domestic relations order, such as the decree, delineates a former spouse's right to receive marital property, a court may enter a QDRO if the domestic relations order satisfies the requirements specified in 29 U.S.C. § 1056(d)(3). *Baird,* 843 S.W.2d at 391.

Under the QDRO's terms, Seal will not obtain more than what she and Raw agreed in their property settlement that she should get. When a circuit court enters a QDRO to enforce a party's right to receive pension benefits accorded in its original decree, we will not deem the QDRO to be modifying the decree's terms because the decree continues to exist and to operate in governing the parties' rights and responsibilities.[2]

We further note that § 452.330.5 gives the circuit court authority to modify "orders intended to be qualified domestic relations orders affecting pension, profit sharing and stock bonus plans ... only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of order." Because the circuit court was entitled to enter a QDRO to enforce those rights, it retained jurisdiction to modify the QDRO's terms to establish or to maintain the QDRO's status as "qualified" under a particular plan or to conform its terms to effectuate the parties' intent. Any question regarding a variation between the terms of the QDRO and the original decree does not void the entry of the QDRO, but the circuit court may address the issue because of its continuing jurisdiction to modify the QDRO for the purposes stated in § 452.330.5. Raw's third point is denied.

We affirm the judgment of the circuit court.

ULRICH, C.J., P.J., and HOWARD, J., concur.

---

2. We distinguish the potential modifying effect of a QDRO entered to enforce rights under a decree from a QDRO entered to create rights to pension division at the time of the decree. We do not decide whether the circuit court's modification pursuant to § 452.330.5 of a QDRO which created the division of pension benefits at the time of the decree changes the technical disposition of property.