**Paulette M. OCHOA, Appellant,**

v.

**Marco A. OCHOA, Respondent.**

No. SC 83966.

Supreme Court of Missouri,
En Banc.

April 9, 2002.

---

David G. Kullman, Edward C. Vancil, St. Louis, for Appellant.

Lawrence Wittels, St. Louis, for Respondent.

DUANE BENTON, Judge.

In 1987, Paulette M. Ochoa and Marco A. Ochoa legally separated. The separation order divided their marital property, including husband's retirement plans. In 2000—more than ten years later—the circuit court refused to modify the order to "qualify" it under the federal Employee Retirement Income Security Act. After opinion by the Court of Appeals, this Court granted transfer. *Mo. Const. art. V, sec. 10.* Reversed and remanded.

## I.

The 1987 separation agreement—incorporated into the order of legal separa-

tion—divided husband's ERISA retirement plans, as marital property. The order makes wife an "alternate payee." It requires the plans to pay the wife directly, and adjudicates "the parties' respective marital property rights in and to the subject matter Plans pursuant to Section 452.330 RSMo *et seq.*"

The couple intended for the order to be "qualified":

> It is the intention of the Wife and Husband that the foregoing provisions shall qualify as a Qualified Domestic Relations Order [QDRO] and whenever the provisions herein under are inconsistent with the definition of a Qualified Domestic Relations Order as may be contained, from time to time, in the Internal Revenue Code of 1954, as amended, and/or the Employees Retirement Security Act of 1974, as may or may not be amended, this Agreement shall be amended from time to time as may be necessary to comply with the requirements for a Qualified Domestic Relations Order. Both parties shall enter into an agreed order of court as may be reasonably required to amend this article, and/or the Judgment for Legal Separation to so comply.

Later in 1987, wife mailed a copy of the order to the plan administrator. Acknowledging receipt, the administrator noted that it would not restrict activity in husband's plans until specifically ordered to do so.

More than ten years later—either in 1999 or 2000—the administrator told the couple that the 1987 order did not create a QDRO. Wife drafted a revised order, which the administrator found acceptable in April 2000.

The circuit court refused to approve the revised order. This appeal followed.

## II.

■ The issue is whether the circuit court can modify the retirement plan provisions in the 1987 order, in order to qualify it under ERISA. Generally, an order dividing marital property is final. *Sections 452.330.5, 452.360.2*[1]; *Doss v. Doss*, 822 S.W.2d 427, 428 (Mo. banc 1992); *Chrun v. Chrun*, 751 S.W.2d 752, 755 (Mo. banc 1988). Wife invokes the statutory language:

> orders intended to be qualified domestic relations orders affecting pension, profit sharing and stock bonus plans pursuant to the U.S. Internal Revenue Code[2] shall be modifiable only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order.

*Section 452.330.5*. See *Seal v. Raw*, 954 S.W.2d 681, 685 (Mo.App.1997).

■ Husband counters with a different statute, arguing that the 1987 order is conclusively presumed paid and satisfied, because it was entered more than ten years before this suit. *Section 516.350.1*. Statutory interpretation is a question of law, which this Court reviews de novo. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Delta Air Lines, Inc. v. Director of Revenue*, 908 S.W.2d 353, 355 (Mo. banc 1995).

## A.

■ In a legal separation, the circuit court divides marital property in just pro-

---

**1.** All statutory citations are to RSMo 2000.

**2.** As relevant here, the requirements of the Internal Revenue Code mirror those of

ERISA. See *26 U.S.C. 401(a)(13), 414(p); 29 U.S.C. 1056(d)(3)*.

portions. *Section 452.330.1.* To alienate or assign ERISA retirement benefits, the court must enter a QDRO. *29 U.S.C. 1056(d)(1), (3)(A) (1994); Baird v. Baird,* 843 S.W.2d 388, 391 (Mo.App.1992). A qualified order assures that a spouse receives benefits as an alternate payee. *29 U.S.C. 1056(d)(3)(A), (J).*

Here, by agreement and court order, the couple's "intention" was to create a QDRO, that "shall be amended from time to time" to meet ERISA requirements. By statute, an order so intended may be modified in order to "establish" it as a QDRO. *Section 452.330.5.* The order in this case is clearly modifiable.

### B.

Section 516.350.1 states:

Every judgment, order or decree . . . shall be presumed to be paid and satisfied after the expiration of ten years from the date of the original rendition thereof . . . and after the expiration of ten years from the date of the original rendition . . . such judgment shall be conclusively presumed to be paid, and no execution, order · or process shall issue thereon, nor shall any suit be brought, had or maintained thereon for any purpose whatever.

Husband argues that the 1987 order—more than ten years old—is conclusively presumed paid and satisfied. See *Pirtle v. Cook,* 956 S.W.2d 235, 238 (Mo. banc 1997).

Citing Court of Appeals cases, husband asserts that establishing a QDRO would be "execution, order, or process" on a judgment more than 10 years old. See *Starrett v. Starrett,* 24 S.W.3d 211, 213 (Mo. App.2000); *Hanff v. Hanff,* 987 S.W.2d 352, 356 (Mo.App.1998). The *Starrett* and *Hanff* cases are inapposite, because neither case addresses original orders "intended to be qualified domestic relations orders."

Wife need not seek modification in order to obtain property rights in the plans. The 1987 order made her a separate owner of three-fourths of the retirement plans. See *Riener v. Riener,* 926 S.W.2d 6, 8 (Mo.App.1996). Cf. *McCafferty v. McCafferty,* 96 F.3d 192, 197 (6th Cir.1996); *Bush v. Taylor,* 912 F.2d 989, 992–93 (8th Cir.1990). The 1987 order required the plan administrator, not husband, to pay benefits. It described wife as an "alternate payee," which gives her "a right to receive all, or a portion of, the benefits payable under a plan." *29 U.S.C. 1056(d)(3)(J), (K).* The order expressly "adjudicates" the marital property rights in the plans. See *Brady v. Brady,* 39 S.W.3d 557, 562 (Mo.App.2001). As to husband, the judgment in favor of wife was paid and satisfied when the 1987 order granted separate ownership to her.

■ Even though wife is a separate owner, the administrator will not pay her benefits until the order is modified to "qualify." Qualification is a specific procedure for federal recognition of state property rights in ERISA plans. *29 U.S.C. 1056(d)(3)(B)(i)(II); 29 U.S.C. 1056(d)(3)(C), (D).* It does not change wife's adjudicated property rights. See, e.g., *Gendreau v. Gendreau,* 122 F.3d 815, 819 (9th Cir.1997); *Long v. Donahue,* 148 B.R. 904, 907–08 (Bankr.W.D.Mo.1992). Although the state court issues the order, the plan administrator determines whether the order satisfies ERISA's requirements. *29 U.S.C. 1056(d)(3)(G).* If not, the state court may modify its order to achieve qualification. See *29 U.S.C. 1056(d)(3)(H)(ii).*

■ The General Assembly enacted a specific law for orders intended to be QDROs. *Section 452.330.5.* The statute contains no time limit for modification. *Id.; Miles v. Miles,* 43 S.W.3d 876, 879 (Mo.App.2001); *Wells v. Wells,* 998 S.W.2d

165, 168 (Mo.App.1999). The legislature anticipated that an order could decide ownership, but not meet the federal requirements. The legislature ensured that state court orders could be modified to establish or preserve federal recognition of state property rights.

The procedure to establish, maintain, or effectuate orders intended to be QDROs is sui generis—governed by ERISA and 452.330.5. See *29 U.S.C 1056(d)(3); sec. 452.330.5.* In this case, the presumption of payment in section 516.350.1 is irrelevant.[3]

### III.
The judgment is reversed, and the case remanded.

LIMBAUGH, C.J., WHITE, WOLFF, LAURA DENVIR STITH, and PRICE, JJ., concur.

RICHARD B. TEITELMAN, J., not participating.

**3.** This Court need not address the parties' arguments about the 2001 amendment to section 516.350. *Senate Bill 10, 2001 Mo. Laws 897.*