

# In the Missouri Court of Appeals

# Eastern District

### DIVISION III

FRANK J. LAENEN, and )
JENNIFER R. LAENEN, ) No. ED100672
)
       Appellants, ) Appeal from the Circuit Court
) of Franklin County
vs. )
) Honorable David L. Hoven
BETH A. LAENEN, )
)
       Respondent. ) FILED: September 16, 2014

### Introduction

Appellant Jennifer Laenen ("Jennifer") appeals from the judgment of the Circuit Court of

Franklin County ordering the entry of a Qualified Domestic Relations Order ("QDRO")[1] affecting the

pension of Jennifer's deceased husband, Frank Laenen ("Frank").[2] The QDRO recognized the right

of Beth Laenen ("Beth"), Frank's former spouse, to receive a portion of Frank's pension pursuant to a

separation agreement incorporated into Beth and Frank's marriage dissolution decree. On appeal,

Jennifer contends that the trial court lacked authority to enter the QDRO because Frank died before

the trial court entered the QDRO. Jennifer further asserts that the separation agreement contained no

terms evidencing the parties' intention that the separation agreement be considered a QDRO, and that

---

[1] A QDRO is an order that "creates or recognizes the existence of an alternate payee's right to . . . receive all or a portion of the benefits payable with respect to a participant under a participant plan [.]" Seal v. Raw, 954 S.W.2d 681, 683 (Mo. App. W.D. 1997) (quoting 29 U.S.C. § 1056(d)(3)(B)(i)(I) (Supp.1997)).
[2] To avoid confusion, the parties will be referred to by their first names. No disrespect is intended by the Court.

the QDRO improperly modifies the terms of the separation agreement by awarding Beth an interest in Frank's pension that differs from the interest granted her in the separation agreement.

We hold that Section 452.330.5 RSMo authorized the trial court to enter a QDRO to effectuate the terms of the dissolution decree previously entered. However, when the trial court substantively modified the language of the QDRO from the terms of the dissolution decree previously entered, it did so in violation of Section 452.330.5. Accordingly, we reverse and remand with instructions to the trial court to enter an amended QDRO consistent with the terms of the dissolution decree.

<u>Factual and Procedural History</u>

On November 12, 2010, the trial court entered a judgment dissolving the marriage of Beth and Frank. The judgment incorporated an attached separation agreement dividing the couple's marital property (hereinafter, "the Separation Agreement"). The parties agreed to divide Frank's Anheuser-Busch Employee Pension equally between them. The Separation Agreement states, in pertinent part:

> 7. PERSONAL PROPERTY PASSING TO WIFE: The Wife shall have as her sole and exclusive property, and the Husband hereby quit-claims any interest thereto to the Wife, the following personal property listed in Exhibit "A" attached hereto, made a part hereof as though fully set out herein and initialed by both Husband and Wife.
>
> 8. PERSONAL PROPERTY PASSING TO HUSBAND: The Husband shall have as his sole and exclusive property, and the Wife hereby quit-claims any interest thereto to the Husband, the following personal property listed in Exhibit "B" attached hereto, made a part hereof as though fully set out herein and initialed by both Husband and Wife.
>
> * * *
> <u>EXHIBIT A</u>
> **PERSONAL PROPERTY PASSING TO WIFE**:
> . . .
> 4. One-half (1/2) of Husband's pension upon Husband's retirement, unless Wife remarries.
>
> * * *

2

<u>EXHIBIT B</u>
**PERSONAL PROPERTY PASSING TO HUSBAND:**
**. . .**
4. One-half (1/2) of Husband's pension upon Husband's retirement.

Frank married Jennifer on August 31, 2011. Frank died on February 27, 2012. At the time of his death, Frank remained employed with Anheuser Busch.

In April 2012, Beth sent a letter to the trial court requesting that it enter a QDRO to protect her interest in Frank's pension. In her letter Beth stated that she was not represented by counsel in the divorce, and Frank's attorney did not advise her or Frank that a QDRO was necessary for Beth to obtain the one-half share of Frank's pension to which she was entitled under the Separation Agreement.

The trial court subsequently directed Charles Hurth, the attorney who represented Frank in his divorce, to "prepare a QDRO, in conformance with the Judgment entered on Nov. 21, 2010, to enable [Beth] to obtain the share of [Frank's] employment benefits to which she is entitled to, per the Judgment." On May 31, 2012, the trial court entered a QDRO naming Beth as an alternate payee entitled to 50% of the accrued benefit of Frank's pension as of November 9, 2010. The QDRO further stated that Beth should be considered Frank's surviving spouse for the purpose of receiving any death benefits under the pension.

On June 1, 2012, Jennifer moved the trial court to intervene in the matter and to vacate the QDRO entered May 31, 2012. Jennifer asserted that the trial court had no authority to enter a QDRO because Frank died prior to Beth's request for a QDRO and because the entry of a QDRO was not supported by the law or the record of the case. Beth argued that the trial court had authority pursuant to Section 452.330.5 to enter a QDRO to enforce her right to the share of Frank's pension granted by the dissolution decree. [3] After a hearing on the matter, the trial court determined that it had authority

---

[3] All statutory references are to RSMo (2000).

3

under Section 452.330.5 to enter the QDRO and approved the QDRO for submission to the plan administrators.

On or about January 16, 2013, the plan administrator for Frank's pension determined that the QDRO submitted by Beth did not qualify as a QDRO under applicable federal law in accordance with the pension plan's procedures and policies. Beth submitted a revised proposed QDRO for the trial court's review and signature. Jennifer filed renewed objections to the proposed QDRO as well as a motion for stay of execution of the QDRO pending appellate review. On October 9, 2013, the trial court entered its final judgment, again holding that it had authority to enter the QDRO under Section 452.330.5. The trial court also granted Jennifer's motion for stay of execution of the QDRO pending appellate review of its judgment. Jennifer now appeals.

### Points on Appeal

First, Jennifer asserts that the trial court erred in entering the QDRO because the trial court lost authority to enter any order in the underlying dissolution of marriage action once Frank died. Second, Jennifer contends that the trial court erred in entering the QDRO because orders affecting the distribution of marital property may be modified only if the order was intended to be a QDRO. Jennifer maintains that the Separation Agreement did not include any terms expressing the parties' intent that the agreement be considered a QDRO. Finally, Jennifer asserts that the trial court erred in entering the QDRO because the QDRO improperly modifies the terms of the Separation Agreement in that the QDRO ignores the conditions that Frank retire and Beth never remarry.

### Standards of Review

We review the trial court's decision modifying a QDRO pursuant to Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). In re Marriage of Green, 341 S.W.3d 169, 174 (Mo. App. E.D. 2011). Thus, we will affirm the decision unless there is no substantial evidence to support it, it is

4

against the weight of the evidence, or it erroneously declares or applies the law. Murphy, 536 S.W.2d at 32. "Interpretation of a dissolution judgment and a QDRO is an issue of law that we review *de novo*." Roberts v. Roberts, 432 S.W.3d 789, 793 (Mo.App. W.D. 2014) (quoting Kuba v. Kuba, 400 S.W.3d 869, 875 (Mo.App. W.D. 2013)).

Discussion

**I.      Section 452.330.5 authorized the trial court to enter a QDRO.**

Jennifer's first point on appeal challenges the trial court's authority to enter the QDRO after Frank's death. Citing a longstanding rule in Missouri that a divorce action abates upon the death of either spouse, Jennifer reasons the trial court lacked authority after Frank's death to enter any order in the divorce action, including a QDRO. We disagree.

Generally, once a decree or judgment for dissolution of marriage becomes final, the property provisions of the decree are not modifiable. Ochoa v. Ochoa, 71 S.W.3d 593, 595 (Mo. banc 2002). However, Section 452.330.5 creates an express but limited exception to this rule specifically related to QDROs:

> The court's order as it affects distribution of marital property shall be a final order not subject to modification; provided, however, that orders intended to be qualified domestic relations orders affecting pension, profit sharing and stock bonus plans pursuant to the U.S. Internal Revenue Code shall be modifiable only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order.

Section 452.330.5. Accordingly, under Section 452.330.5, the trial court may modify its judgment and decree of dissolution "to establish, to maintain, or to revise a QDRO in order to ensure that the order is 'qualified'" under applicable federal law. In re Marriage of Green, 341 S.W.3d at 174 (quoting Shelton v. Shelton, 201 S.W.3d 576, 580 (Mo. Ct. App. 2006)). In enacting Section 452.330.5, "[t]he legislature anticipated that an order could decide ownership, but not meet the federal requirements. The legislature ensured that state court orders could be modified to establish or

5

preserve federal recognition of state property rights." Ochoa, 71 S.W.3d at 597. The statute places no time limits or restrictions as to when modification for this purpose can be done. Shelton, 201 S.W.3d at 580.

Jennifer argues that a trial court loses any authority it possessed to enter a QDRO under Section 452.330.5 once a party to the dissolution action dies. In support of her argument, Jennifer cites three cases – Shepler v. Shepler, 348 S.W.2d 607 (Mo. App. STL 1961), Leventhal v. Leventhal, 629 S.W.2d 505 (Mo. Ct. E.D. 1981), and Smithart v. Sportsman, 614 S.W.2d 320 (Mo. App. W.D. 1981) – where the Court of Appeals determined that the trial court lacked jurisdiction to modify a dissolution decree after the death of one of the spouses. The facts of these cases are distinguishable from those before us, and we are not persuaded that these cases control our analysis here. Notably, Shepler, Leventhal, and Smithart each involved a motion to modify brought by one party to amend the underlying judgment and thereby change the substantive rights of the parties to the dissolution. In this case, Beth did not seek to amend the terms of the original dissolution decree. To the contrary, Beth sought a QRDO for the sole purpose of enforcing her right to obtain one-half of Frank's pension granted to her by the dissolution decree.

Furthermore, the courts in Shepler, Leventhal, and Smithart considered the impact of a party's death on the trial court's jurisdiction to modify a decree of dissolution. The parties agree that following the Supreme Court's decision in J.C.W. ex rel Webb v. Wyciskalla, 275 S.W.3d 249 (Mo. banc 2009), the inquiry before this Court is not one of jurisdiction, but whether the trial court had the authority to enter the QDRO following the death of a party to the dissolution. Neither Shepler, Leventhal, nor Smithart address this issue, and we have found no cases limiting the authority of the trial court to enter a QDRO because of the death of the one of the parties. We are guided by the language of Section 452.330.5, which explicitly authorizes the trial court to modify a dissolution

6

decree for the purpose of establishing the order as a QDRO that meets federal requirements. Point One is denied.

**II.      The trial court properly enforced provisions of the Settlement Agreement through entry of the QDRO.**

Jennifer next argues that even if the trial court had authority to enter the QDRO under Section 452.330.5, an order affecting the distribution of marital property may only be modified if that order is intended to be a qualified domestic relations order. Section 452.330.5. Jennifer asserts that because the Separation Agreement does not meet federal requirements for a qualified domestic relations order and does not otherwise express the parties' intent that the agreement be considered a qualified domestic relations order, the trial court erred in entering the QDRO. We disagree.

In addressing Jennifer's second point on appeal, we find instructive the Western District's opinion in Seal v. Raw, 954 S.W.2d 681, 683 (Mo. App. W.D. 1997). In Seal, the parties agreed to the distribution of their marital property, and the trial court incorporated their settlement agreement into its decree of dissolution. Id. at 682. The settlement agreement provided that Seal would receive a share of Raw's "retirement/pension/annuity" plan from Raw's employer, but did not provide for entry of a QDRO. Id. Six years later, the trial court entered a QDRO to protect Seal's interest in Raw's pension benefits. Id. In upholding the trial's court's judgment, the Western District concluded that the trial court could properly enter a QDRO to enforce the parties' settlement agreement. Id. at 683. The court cited Section 452.325.2, which provides that "Terms of [an] agreement set forth in the decree are enforceable by all remedies available for the enforcement of a judgment." Id. Importantly, the court specifically found that "[t]he property settlement's not mentioning a QDRO did not preclude the circuit court's later use of a QDRO to enforce its decree." Id.

7

Like the settlement agreement at issue in <u>Seal</u>, the Settlement Agreement here granted Beth a specified interest in Frank's pension although the agreement did not provide for entry of a QDRO or make reference to a QDRO. As in <u>Seal</u>, we hold that the failure to reference a QDRO in the Settlement Agreement does not preclude the trial court from subsequently entering a QDRO to enforce the terms of the settlement. <u>See id.</u> at 683. The plain language of the Settlement Agreement, which was incorporated into the trial court's dissolution decree, expresses the parties' clear intent that Beth receive a 50% share of Frank's pension. The trial court's entry of the QDRO accomplishes nothing more than recognizing and enforcing Beth's right to share in the pension plan as established in the dissolution decree.

We also reject Jennifer's argument that the Settlement Agreement was not intended to be a QDRO because it did not meet the federal requirements to be deemed a QDRO. This argument is without merit as the very purpose of Section 452.330.5 is to allow the trial court to modify a domestic relations order to ensure that it meets the federal requirements to be deemed "qualified." <u>Ochoa</u>, 71 S.W.3d at 597. Point Two is denied.

**III.     The QDRO improperly modifies the terms of the Separation Agreement by omitting the condition that Beth never remarry.**

In her final point on appeal, Jennifer contends that the QDRO improperly modifies the terms of the Separation Agreement by awarding Beth an interest in Frank's pension that varies from the interest Beth was awarded in the agreement. Specifically, Jennifer argues that the QDRO omits two conditions precedent found in the Separation Agreement that must be met before Beth is entitled to take her share of Frank's pension: (1) that Frank retire, and (2) that Beth never remarry. Such modifications, Jennifer argues, are outside the scope of modifications permissible under Section 452.330.5.

8

A condition precedent is a condition that must be fulfilled before the duty to perform an existing contract arises. Buchheit v. Cape Toyota–Suzuki, Inc., 903 S.W.2d 644, 646 n.3 (Mo. App. E.D. 1995). Conditions precedent are usually created by such phrases as "on condition," "provided that," "so that," and the like, although such expressions are not necessary if the contract is of such a nature as to show that parties intended to provide for a condition precedent. Globe Am. Corp. v. Miller Hatcheries, 110 S.W.2d 393, 396 (Mo. App. K.C. 1937); Kansas City S. Ry. Co. v. St. Louis-S.F. Ry. Co., 509 S.W.2d 457, 460 (Mo. 1974). Conditions precedent are disfavored by Missouri courts, and contract provisions are construed as such only if unambiguous language so requires or they arise by necessary implication. Juengel Const. Co., Inc. v. Mt. Etna, Inc., 622 S.W.2d 510, 513 (Mo. App. E.D. 1981).

The Settlement Agreement awarded Beth "One-half (1/2) of Husband's pension upon Husband's retirement, unless Wife remarries." We are not persuaded that Beth's right to her share of Frank's pension is conditioned upon Frank's retirement. Beth's right to receive one-half of Frank's pension was established when Frank and Beth signed the Settlement Agreement and the trial court subsequently incorporated the Settlement Agreement into the dissolution decree. Informing Beth "when" she was permitted to exercise that right is a function of the phrase "upon Husband's retirement." This phrase, as used in the context of the Settlement Agreement, is clearly temporal language, not conditional language. The phrase explains "when" not "if" Beth may collect on the pension. Whenever Frank's pension benefits became subject to distribution is when Beth was entitled to collect her half-interest.

We agree, however, that the Settlement Agreement conditions Beth's right to collect her share of Frank's pension on her marital status. Beth's marital status determines "if," not "when" she may share in the pension. If Beth remarries, she is not entitled to share in Frank's pension. Excluding this

9

term from the QDRO confers additional benefits upon Beth not agreed to in the Settlement Agreement and, therefore, modifies the dissolution decree in violation of Section 452.330.5. See In re Marriage of Lueken, 267 S.W.3d at 802 (finding the QDRO awarded additional benefits not granted in the dissolution decree and remanding to the trial court to amend the QDRO to conform to the terms of the decree). We accordingly reverse and remand with instructions to the trial court to enter an amended QDRO consistent with the language of the dissolution decree. Point Three is granted.

## Conclusion

The trial court was authorized to establish a QDRO to enforce the provisions of the Settlement Agreement under Section 452.330.5. However, in entering the QDRO, the trial court modified the language of the original dissolution decree in violation of Section 452.330.5. Accordingly, we reverse and remand with instructions to the trial court to enter an amended QDRO consistent with the language of the dissolution decree.

Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., J., Concurs
Gary M. Gaertner, Jr., J., Concurs

10