In re the MARRIAGE OF Richard V. GREEN and Sigrid V. Green.

Richard V. Green, Petitioner/Appellant,

v.

Sigrid V. Green, Respondent/Respondent.

No. ED 94417.

Missouri Court of Appeals, Eastern District, Division Two.

May 3, 2011.

Denise Watson–Wesley Coleman, Watson–Wesley Coleman, L.C., St. Louis, MO, for appellant.

Sigrid Green, Deerfield Beach, FL, pro se.

KATHIANNE KNAUP CRANE, Judge.

Husband appeals from a judgment entered by the trial court granting wife's motion for entry of a "fourth amended qualified domestic relations order" for the distribution of the marital portion of one of husband's pension accounts. This judgment modified the original dissolution judgment with respect to the division of the marital portion of the pension account and entered a fourth amended qualified domestic relations order (QDRO IV)[1] that modified the original QDRO (QDRO I), which had been approved as "qualified." The plan administrator determined that QDRO IV was not a "qualified" order. We reverse and remand with directions.

Richard Green (husband) and Sigrid Green (wife) were married on July 7, 2001, and separated on or around February 7, 2004. On September 15, 2005, the trial

---

1. Hereinafter, all references to a qualified domestic relations order will be abbreviated as QDRO.

court entered a Judgment of Dissolution. As relevant to this appeal, it ordered:

4. Each party shall receive as their portion of the marital property, free and clear from the claims of the other party the property specified on Attachment B. To achieve an equitable division of the marital estate of the parties, the SBC pension account shall be divided by QDRO such that Husband shall receive 20.9% of the account and Wife shall receive 79.1% of that account.

One of the attachments to the judgment was "SCHEDULE B—MARITAL PROPERTY." It listed "assets" in the first column and the "equity value" for each asset in the second column. The third column listed which of the assets were allocated to husband, and the fourth column listed which of the assets were allocated to wife. Schedule B showed that the marital portion of the SBC pension account had an "equity value" of $54,894, that $11,483 of this amount was allocated to husband, and that $43,411 of this amount was allocated to wife. These dollar amounts represented 20.9% and 79.1%, respectively, of the marital portion of the SBC pension account. Apart from the $11,483, husband was allocated assets with an "equity value" of $54,153. When the $11,483 was added to the $54,153, the "equity value" of husband's total allocated assets were $65,636. Apart from the $43,411, wife was allocated assets with an "equity value" of $22,225. When the $43,411 was added to the $22,225, the "equity value" of wife's total allocated assets was also $65,636.

On January 26, 2006, the trial court entered QDRO I pursuant to the dissolution judgment. QDRO I contained a finding that a portion of husband's SBC pension plan had accrued during the marriage and constituted marital property. It designated wife as "Alternate Payee" and ordered in paragraph 1.d.:

d. The Alternate Payee is hereby assigned, and the plan administrator shall pay directly to the Alternate Payee 79.1% of the marital portion of the benefits payable to the Participant from the Plan. The "marital portion" is that portion accrued between July 7, 2001 (the date of marriage) and September 15, 2005 (the date of the dissolution of the marriage).

It further provided that payments to wife shall be made at husband's normal retirement date, whether or not he has retired, or at the time husband retires and begins receiving benefits, if he retires at an earlier date. Husband was employed by SBC Services at the time the dissolution was pending in 2005, and he was 49 years old when the dissolution decree was entered. Normal retirement age under the SBC pension account was 65. The SBC pension account was administered by Fidelity Employer Services Company LLC (the plan administrator).[2] On March 27, 2006, the plan administrator approved QDRO I as "qualified."

Thereafter, on April 20, 2007, wife filed a motion with the trial court for entry of an amended QDRO. She alleged that, according to calculations she made from documentation that she had received from the plan administrator, the marital portion of the SBC pension account should be $86,831.15. She further alleged that husband had received correspondence from the plan administrator indicating that the marital portion was $48,810.07. She sought an amended QDRO that would clarify the value of the SBC pension account. She attached a proposed QDRO. Husband

2. The name of the plan was subsequently changed to the AT & T Pension Benefit Plan.

For clarity, we will continue to refer to it as the SBC pension account.

filed a motion in opposition. After a hearing, the trial court entered a judgment dated June 26, 2007. It concluded:

> The court retains jurisdiction to order the entry of an amended QDRO to clarify the court's award of the respective portions of [husband's] SBC Pension Benefit Plan that was intended by the court's judg[ ]ment of September 15, 2005. The marital interest to be divided is the difference between the value of [wife's] interest in the Plan as of the date of the marriage (July 7, 2001) which has now been documented to be $167,790.65 and the value of that interest as of the date of the dissolution judg[ ]ment (September 15, 2005) which has now been documented to be $248,975.11. Since the marital interest in the Plan is larger than originally presented to the court, in order to preserve the court's equitable division of the marital property and debts of the parties, [wife] should properly receive 68.3% of the marital interest and [husband] should properly receive 31.7% of the marital interest.

It ordered wife to submit an amended QDRO consistent with the terms of the judgment.

On July 9, 2007, the trial court entered a second amended QDRO (QDRO II). QDRO II changed paragraph 1.d. to the following:

> d. The Alternate Payee is hereby assigned, and the plan administrator shall pay directly to the Alternate Payee 68.3% of the marital portion of the benefits payable to the Participant from the Plan. The "marital portion" to be divided is the difference between the value of Participant's interest in the Plan as of the date of the marriage, July 7, 2001, which was $167,790.65 and the value of that interest as of the date of the Disso-

lution Judgment, September 15, 2005, which was $248,975.11.

On September 12, 2007, the plan administrator sent a letter rejecting QDRO II because it was not "qualified." Among the reasons given for lack of qualification, the plan administrator specified:

*Alternate Payee's Awarded Benefit*

- The Order fails to provide a clear and calculable award. Specifically Paragraph 1.d provides dollar values of the Participant's accrued benefit as of the date of marriage and the date of Dissolution Judgment which do not correspond to the values in the Plan's records. Please review Section 2.E of the QDRO Guidelines regarding how the Alternate Payee's awarded benefit should be stated. *Please amend the Order to state clearly the Alternate Payee's award as a fraction, percentage **OR** specific dollar amount of the Participant's vested accrued benefit as a specified date or accrued between two dates, in accordance with the Parties' intent.*

Wife's attorney then sent a draft of a third amended QDRO (QDRO III) to the plan administrator. On October 25, 2007, the plan administrator informed wife's attorney that the draft did not contain the necessary requirements for qualification. Among other reasons, the plan administrator advised that the draft still failed to provide a clear and calculable award, repeating the language from its September 12, 2007 letter set out above.

On December 3, 2007, wife filed a motion for entry of a third amended QDRO with the trial court. The record does not disclose any action taken with respect to this motion.

On August 24, 2009, the trial court entered an order requesting husband to submit a memorandum of law challenging its

June 26, 2007[3] judgment along with a proposed QDRO, and it ordered wife to submit a reply and her proposed QDRO. On September 16, 2009, husband filed a memorandum of law that opposed any modification of QDRO I not in compliance with section 452.330.5 RSMo (2000),[4] requested a hearing on the value of the pension benefits, and requested the trial court use a division formula approach approved in prior Missouri cases. He attached an expert's affidavit on the value of the account.

On January 6, 2010, the trial court granted wife's motion for a fourth amended QDRO (QDRO IV) and entered a judgment ordering QDRO IV. This judgment provided:

> The judg[ ]ment entered on June 26, 2007 was for a sum certain which represents the marital portion of the total pension benefits based on the final judg[ ]ment of the court in the dissolution judg[ ]ment. Under Missouri law, the interest income on separate property which accrues during the marriage is marital property. The stated figure of $55,448.99 represents the value of [wife's] portion of the marital portion as of the date of the judg[ ]ment, which is the proper date of valuation as it is the date upon which the division of property was to become effective. Therefore, this figure has been entered in paragraph 1d of the fourth amended qualified domestic relations order.

> However, neither the dissolution decree of September 15, 2005 nor the modification judg[ ]ment of June 26, 2007 was intended to order the plan administrator to immediately issue a check in a specified amount to [wife] as the alternate payee. Instead, [wife's] right to receive her share of the total benefits is subject to whatever form and conditions are provided under the plan as specified in paragraph 1e of the fourth amended qualified domestic relations order.

The court ordered QDRO IV, which changed paragraph 1.d. to the following:

> d. The alternate payee is hereby assigned and the plan administrator shall pay the alternate payee $55,448.99 as of June 26, 2007 of the benefits payable to the participant from the Plan.

On January 22, 2010, the plan administrator rejected QDRO IV on the ground that it was not a "qualified" order. Among the listed reasons for non-qualification, the plan administrator pointed out: "The award, as written, will be interpreted to assign the Alternate Payee $55,448.99 of the Participant[']s *vested accrued benefit* as of June 26, 2007." The plan administrator further explained: "If the award is not in accordance with the Parties' intent, please amend the Order accordingly." The plan administrator also warned that a flat dollar award would be subject to actuarial adjustments.

Husband appeals from the January 6, 2010 judgment and QDRO IV incorporated therein. He asserts that the trial court erred in entering QDRO IV because it did not modify QDRO I for either of the purposes allowed by section 452.330.5. Alternatively, he claims that if the court had the authority to modify QDRO I by entering QDRO IV, it erred in using an improper date, June 26, 2007, and it erred in not holding an evidentiary hearing.

3. The minutes refer to a June 26, "2009" judgment. However, it appears from the context that the court was referring to the June 26, 2007 judgment.

4. All further statutory references are to RSMo (2000), unless otherwise indicated.

## DISCUSSION

Generally, a party to a civil action may only appeal from a final judgment. Section 512.020(5). However, one exception to this rule is that an appeal may be taken from "any special order after final judgment in the cause." Section 512.020(5). To alienate or assign Employee Retirement Income Security Act (ERISA) retirement benefits when dividing marital property, a court must enter a QDRO, which assures that a spouse receives pension benefits as an alternate payee. *Ochoa v. Ochoa*, 71 S.W.3d 593, 595–96 (Mo. banc 2002); *see* 29 U.S.C. 1056(d)(1), (3)(A) (2000). A QDRO is an order that may be obtained after and pursuant to a previously entered final judgment of dissolution, and it therefore fits within the "special order" exception contained in section 512.020(5). *Brooks v. Brooks*, 98 S.W.3d 530, 531 (Mo. banc 2003). Accordingly, the January 6, 2010 judgment is appealable.

We review the trial court's decision modifying a QDRO pursuant to *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *See Bradley v. Bradley*, 194 S.W.3d 902, 906 (Mo.App.2006). Interpretation of a dissolution judgment and a QDRO is an issue of law that we review *de novo*. *In re Marriage of Lueken*, 267 S.W.3d 800, 801 (Mo.App.2008).

## I. *Authority to Enter QDRO IV*

For his first point, husband contends that the trial court exceeded its statutory authority when it entered QDRO IV to modify QDRO I because the amendment did not serve to establish or maintain the order as a QDRO or to effectuate the intent of QDRO I.[5]

In this case, neither party appealed from the trial court's judgment of dissolution dated September 15, 2005. As a result, the judgment was final with respect to all property with which it dealt. *Meissner v. Schnettgoecke*, 211 S.W.3d 157, 160 (Mo. App.2007). Further, it is undisputed that QDRO IV modified the language in QDRO I, which the plan administrator had determined was a "qualified" QDRO. QDRO I assigned to wife a percentage of the marital portion of the benefits payable to husband from the SBC pension account that accrued between July 7, 2001, and September 15, 2005, whereas QDRO IV assigned to wife $55,448.99 "as of June 26, 2007[,] of the benefits payable to" husband from the SBC pension account. It is also undisputed that QDRO IV was not "qualified."

As a general matter, a final judgment distributing marital property may not be modified in the same case. *Ochoa*, 71 S.W.3d at 595; *Chrun v. Chrun*, 751 S.W.2d 752, 755 (Mo. banc 1988); *Meissner*, 211 S.W.3d at 159–60; section 452.360.2. A party cannot seek redistribution of property covered by the decree. *Meissner*, 211 S.W.3d at 160. However, the legislature allows courts to modify orders "intended to be" QDROs in two limited situations: (1) "for the purpose of establishing or maintaining the order as a qualified domestic relations order" or (2) "to revise or conform its terms so as to effectuate the expressed intent of the order." Section 425.330.5; *Lueken*, 267 S.W.3d at 802; *Meissner*, 211 S.W.3d at 160; *Miles v. Miles*, 43 S.W.3d 876, 879 (Mo.App.2001). In addition, there is nothing in the statute that authorizes a court to replace a *qualified* domestic relations order with a domestic relations order that has not been qualified by the plan adminis-

---

**5.** Although husband used the term "subject matter jurisdiction," when a court is statutorily barred from taking a specific action, it lacks "authority" and not "subject matter jurisdiction." *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 254 (Mo. banc 2009).

trator. *Offield v. Offield,* 955 S.W.2d 247, 249 (Mo.App.1997).

The judgment ordering the entry of QDRO IV is unauthorized because QDRO IV was not qualified. Although QDRO IV was intended to be a QDRO, the plan administrator expressly determined that it was not qualified after the court had entered it; QDRO IV is therefore a non-qualified domestic relations order. By entering QDRO IV, the trial court effectively invalidated the QDRO I's "qualified" status. *Offield,* 955 S.W.2d at 249. Section 452.330.5 does not permit this. *Id.* The trial court had no authority to replace QDRO I with an unqualified domestic relations order.

This is reason enough to reverse that part of the judgment ordering QDRO IV. However, the judgment ordering QDRO IV also was not authorized under either of the two exceptions contained in section 452.330.5, and this constitutes another reason for reversal.

■ The first exception requires that a modification be for the purpose of "establishing or maintaining the order as a QDRO" under section 452.330.5. *Ochoa,* 71 S.W.3d at 595. In enacting section 452.330.5, the legislature "anticipated that an order could decide ownership[ ] but not meet the federal requirements." *Id.* at 597. It "ensured that state court orders could be modified to establish or preserve federal recognition of state property rights." *Id.*; 29 U.S.C. 1056(d)(3)(A), (J). The first exception has been interpreted to mean that the trial court "retains continuing jurisdiction to establish, to maintain, or to revise a QDRO to ensure that it is 'qualified.'" *Shelton v. Shelton,* 201 S.W.3d 576, 580 (Mo.App.2006); *Offield,* 955 S.W.2d at 249. "Qualification 'is a specific procedure for federal recognition of state property in ERISA Plans.'" *Meissner,* 211 S.W.3d at 160 (quoting

*Ochoa,* 71 S.W.3d at 596). However, the qualification process does not change a spouse's adjudicated property rights. *Ochoa,* 71 S.W.3d at 596; *Meissner,* 211 S.W.3d at 160. After a state court orders a QDRO, the plan administrator determines whether the order satisfies ERISA's requirements for it to be "qualified." *Ochoa,* 71 S.W.3d at 596; 29 U.S.C. 1056(d)(3)(G)(i). If it does not satisfy ERISA's standards, the state court may modify its order to achieve qualification. *Ochoa,* 71 S.W.3d at 596.

■ When a QDRO has been given "qualified" status, and there is no evidence that the qualified QDRO is in jeopardy of losing its "qualified" status, a court cannot enter an amended QDRO "'for the purpose of establishing or maintaining the order as a qualified domestic relations order.'" *Miles,* 43 S.W.3d at 879 (quoting section 452.330.5). Here, there was no evidence that QDRO I was in danger of losing its qualified status. Accordingly, the trial court did not enter QDRO IV for the purpose of establishing or maintaining QDRO I as a QDRO. The trial court did not have authority under the first exception in section 452.330.5 to enter QDRO IV.

■ The second exception listed in section 452.330.5 permits a court to modify a QDRO "to revise or conform its terms so as to effectuate the expressed intent of the order." To determine if the trial court entered an amended QDRO to effectuate the expressed intent of the order, we look at the original order, including the dissolution decree. *Wilson v. Lilleston,* 290 S.W.3d 795, 800 (Mo.App.2009); *Lueken,* 267 S.W.3d at 802–03. Under the second exception in section 452.330.5, a trial court has the authority to hold a hearing to consider the parties' evidence disputing the effect of a qualified QDRO compared

with the intent of the dissolution decree; and the trial court can then amend the qualified QDRO with another qualified QDRO if the original, qualified QDRO does not effectuate the expressed intent of the order. *Offield*, 955 S.W.2d at 249.

In this case, the revisions in QDRO IV did not effectuate the expressed intent of the dissolution decree. The dissolution decree stated: "To achieve an equitable division of the marital assets of the parties, the SBC pension account shall be divided by QDRO such that Husband shall receive 20.9% of the account and Wife shall receive 79.1% of that account." QDRO I specified that the percentages were of the marital portion of the SBC pension account and that the marital portion was that portion accrued between July 7, 2001, and September 15, 2005.

The original decree and QDRO I sought to achieve an equitable division of marital property by using a specific method for doing so. It took the "equity value" of the marital portion of the account that had accrued during the marriage, which was a dollar amount, and then it allocated to wife a dollar amount from this sum that, when added to the dollar amount of her other marital property, would be equal to the dollar amount of husband's share of the marital property, including pension benefits awarded to husband. The court then took the two dollar amounts representing husband's and wife's shares of the "equity value" of the marital portion of the SBC pension account, and it converted these amounts to percentages of the "equity value" of the marital portion of the pension account. In drafting QDRO I, the trial court used the same percentage allocated to wife (79.1%) to represent the percentage of "the marital portion of the benefits payable to [husband] from the Plan" that was to be assigned to wife.

According to wife's first motion to amend QDRO I, the percentages were erroneous because they were based on erroneous underlying dollar amounts for the "equity value" of the marital portion of the SBC pension account. If wife was correct, then QDRO I did not effectuate the intent to equalize the division of marital assets by utilizing this method, because the underlying dollar amounts used to calculate the percentages were also inaccurate.

To effectuate the intent of making an equitable division of the marital property by its chosen method, the trial court only had to find an accurate "equity value" of the marital portion of the pension account; divide that dollar amount between the parties so that, when the new dollar amounts were added to the dollar amounts of the other marital assets allocated to each party, the division remained equal; convert the two new dollar amounts into percentages; and insert the new percentages into the amended QDRO.

QDRO IV did not follow this procedure. Rather, QDRO IV attempted to assign to wife "$55,448.99 as of June 26, 2007[,] of the benefits payable to the participant under the plan." This assignment not only fails to effectuate the intent of the dissolution decree and QDRO I, it also goes far beyond the intent of the dissolution decree and QDRO I by awarding wife a lump sum dollar amount, instead of a percentage of the marital portion of the pension plan benefits, which lump sum dollar amount represented a calculation made from the dollar amounts contained in QDRO II, which the plan administrator had rejected because the numbers did not correspond to values in the plan's records. In addition, QDRO IV introduced a new date for determining the benefits payable to wife and failed to account for actuarial adjustments. QDRO IV therefore wholly failed to effectuate the intent of QDRO I.

After the entry of the qualified QDRO I, the trial court only had the authority to enter a QDRO that was qualified and that satisfied one of the statutory exceptions. It did not do so either in its June 26, 2007 judgment or in its January 6, 2010 judgment, and neither QDRO ordered on those dates was qualified. The only qualified QDRO is QDRO I, entered on January 26, 2006. The trial court exceeded its authority by entering QDRO IV because it was not qualified and did not fall within one of the exceptions of section 452.330.5. Point one is granted.

## II. *Date and Hearing*

■ In his second and third points, husband asserts that the trial court erred in using the June 26, 2007 date to calculate benefits and in not holding an evidentiary hearing. Because husband's first point is dispositive, we do not need to address these points. However, because these issues may arise again in this case if one of the parties seeks an amended QDRO, we will clarify that the final date of the time period during which the marital portion of the SBC pension account accrued is the date of dissolution, which is September 15, 2005, and not June 26, 2007. Further, if one of the parties contends that the "equity value" of the marital portion of the SBC pension account is erroneous, an evidentiary hearing to consider the parties' evidence would be required to determine that value. *Offield,* 955 S.W.2d at 249.

## Conclusion

The judgment of January 6, 2010, is reversed. We remand with directions to vacate QDRO IV and reinstate QDRO I.