

# In the Missouri Court of Appeals
# Eastern District
## DIVISON FOUR

RICHARD GREEN, ) No. ED100571
)
    Respondent, ) Appeal from the Circuit Court of
) St. Louis County
vs. )
)
SIGRID GREEN, ) Honorable John R. Essner
)
    Appellant. ) Filed: October 14, 2014

### *Introduction*

Sigrid Green (Wife) appeals *pro se* the judgment of the Circuit Court of St. Louis County denying Wife's motion for an amended qualified domestic relations order (QDRO) and reinstating the trial court's original QDRO. Wife's brief fails to comply with the rules of appellate procedure so substantially that we cannot review this appeal, and we therefore dismiss it.

### *Factual and Procedural Background*

Wife and Richard Green (Husband) married on July 7, 2001. The trial court entered a judgment of dissolution on September 15, 2005. In its judgment, the trial court found that "the SBC Pension Plan account in Husband's name[,] though established prior to the marriage[,] increased in value during the marriage."[1] The trial court ordered: "To achieve an equitable

---

[1] The name of Husband's pension account subsequently changed to AT&T Pension Benefit Plan. For clarity, we will continue to refer to it as the SBC pension account.

division of the marital estate of the parties, the SBC pension account shall be divided by QDRO such that Husband shall receive 20.9% of the account and Wife shall receive 79.1% of that account." In its attached "Schedule B – Marital Property," the trial court attributed an equity value of $54,894 to the SBC pension account, and distributed $11,483 to Husband and $43,411 to Wife.

On January 6, 2006, the trial court entered QDRO I pursuant to the dissolution judgment. QDRO I ordered:

> [Wife] is hereby assigned, and the plan administrator shall pay directly to [Wife] 79.1% of the marital portion of the benefits payable to [Husband] from the Plan. The "marital portion" is that portion accrued between July 7, 2001 (the date of marriage) and September 15, 2005 (the date of the dissolution of marriage).

The plan administrator, Fidelity Employer Services Company, approved QDRO I as "qualified" on March 27, 2006.

On April 20, 2007, Wife moved the trial court for entry of an amended QDRO clarifying the value of the SBC pension account. On June 26, 2007, the trial court entered a judgment finding:

> The marital interest to be divided is the difference between the value of [Husband]'s interest in the Plan as of the date of the marriage (July 7, 2001)[,] which has now been documented to be $167,790.65[,] and the value of that interest as of the date of the dissolution judgment (September 15, 2005)[,] which has now been documented to be $248,975.11. Since the marital interest in the Plan is larger than originally presented to the court, in order to preserve the court's equitable division of the marital property and debts of the parties, [Wife] should properly receive 68.3% of the marital interest and [Husband] should properly receive 31.7% of the marital interest.

The trial court ordered Wife to submit to the trial court an amended QDRO consistent with the judgment.

On July 9, 2007, the trial court entered QDRO II, but the plan administrator rejected QDRO II because it was not "qualified." Wife subsequently submitted a draft of QDRO III to the plan administrator. Although the plan administrator wrote Wife a letter explaining that QDRO III did not contain the necessary requirements for qualification, Wife filed a motion for entry of QDRO III in the trial court. The record does not disclose what action, if any, the trial court took with respect to this motion.

On January 6, 2010, the trial court granted Wife's motion for a fourth amended QDRO and entered a judgment ordering QDRO IV. In its judgment, the trial court found that the "stated figure of $55,448.99 represents the value of [Wife]'s portion of the marital portion as of the date of the judgment, which is the proper date of valuation as it is the date upon which the division of property was to become effective." Accordingly, QDRO IV provided: "The alternate payee is hereby assigned and the plan administrator shall pay the alternate payee $55,488.99 as of June 26, 2007 of the benefits payable to the participant from the Plan."

On January 22, 2010, the plan administrator rejected QDRO IV on the ground that it was not a "qualified" order because it based the valuation date of the SBC pension account on the date of the June 26, 2007 judgment and not the September 15, 2005 dissolution. Husband appealed the January 6, 2010 judgment ordering QDRO IV, and this court held that the trial court lacked authority to enter QDRO IV because QDRO IV was (1) not "qualified" and (2) did not satisfy Section 452.330.5's exceptions to the rule that a trial court's distribution of marital property is nonmodifiable. In re Marriage of Green, 341 S.W.3d 169, 177 (Mo.App.E.D. 2011).

We therefore reversed and remanded to the trial court "with directions to vacate QDRO IV and reinstate QDRO I."[2] Id.

On September 19, 2011, Wife filed a motion for an evidentiary hearing on the value of the marital portion of the SBC pension account and an amended QDRO. Wife and Husband submitted the matter to the trial court based on the record, which contained: memoranda of law filed by the parties; documentation provided by the plan administrator; the affidavit of Allen Prince, a management consultant for the plan administrator; and the deposition of Rhonda Stone, AT&T's Director of Benefits. In his affidavit, Mr. Prince stated:

> It is important to note that it is not accurate to simply subtract the plan balance on the date of marriage on 7/7/01 ($169,790.65) from the plan balance as of the date of dissolution on 9/15/05 ($254,621.80). Instead, the "marital portion" of [Husband]'s cash balance account must be determined as the marital increment during the 07/07/2001 – 09/15/2005 period. To do this, the Plan must take the $169,790.65 Cash Balance at 07/07/2001 (which is 100% to the benefit of [Husband]) and bring it ahead with Credited Interest (which is 100% to the benefit of [Husband]) to $208,928.78 at 09/15/2005. The marital increment becomes $254,621- $208,928.78 = $45,693.02.

In her deposition, Ms. Stone likewise testified that AT&T "would determine the marital portion of this benefit" by the method described by Mr. Prince.

On September 23, 2013, the trial court entered a judgment finding that Mr. Prince's affidavit "most clearly explains the appropriate method to be used to determine the value of the marital portion of the SBC pension as of September 15, 2005, the date upon which the decree of dissolution was entered and, therefore, the date upon which the division of property was to become effective." The trial court explained:

---

[2] Because Husband's first point on appeal was dispositive, this court did not reach Husband's claims that the trial court erred in failing to hold an evidentiary hearing. However, we stated that, "if one of the parties contends that the 'equity value' of the marital portion of the SBC pension account is erroneous, an evidentiary hearing to consider the parties' evidence would be required to determine that value." Green, 341 S.W.3d at 177.

> Mr. Prince's affidavit clarifies that the premarital pension benefits accrued to [Husband] during his many year[s] of service for SBC accrues interest and that the interest on the premarital portion of the pension benefits is not considered to be part of the marital portion under the terms of the plan. The deposition of Rhonda Stone . . . confirms the statement of Mr. Prince that the marital portion cannot be determined simply by subtracting the value of the pension benefits at the date of the marriage from the value of the pension benefits at the date of the dissolution.

The trial court ordered that "the previously qualified QDRO I is reinstated as originally issued."

Wife appeals *pro se*. This court dismissed Wife's initial brief for multiple, specific violations of the briefing requirements of Rules 84.04 and 84.06. Thereafter, Wife filed an amended brief.[3]

### *Discussion*

In a motion to dismiss and in his brief, Husband requests that we dismiss Wife's appeal based on briefing deficiencies in Wife's points relied on, argument, and appendix. See Rule 84.04(d),(c), and (h). We hold *pro se* appellants to the same standards as attorneys. First Bank v. The Annie-Joyce Group, LLC, 334 S.W.3d 589, 591 (Mo.App.E.D. 2011). Accordingly, *pro se* appellants must substantially comply with Supreme Court Rules, including Rule 84.04, which set forth mandatory rules for appellate briefing. Johnson v. Buffalo Lodging Assocs., 300 S.W.3d 580, 581 (Mo.App.E.D. 2009). "Failure to substantially comply with Rule 84.04 preserves nothing for review and is a proper ground for dismissing an appeal." Lueker v. Mo. W. State Univ., 241 S.W.3d 865, 867 (Mo.App.W.D. 2008).

Wife's brief violates Rule 84.04 in several respects. First, Wife's two points relied on do not comply with Rule 84.04(d).[4] Rule 84.04(d)(1) provides that an appellant's brief must present

---

[3] Wife filed a motion to cancel oral arguments, and this court denied the motion. Wife subsequently failed to appear in court to present her oral arguments.
[4] Wife's Point I states:

points relied on that: "(A) identify the trial court ruling or action that the appellant challenges; (B) state concisely the legal reasons for the appellant's claim of reversible error; and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." The purpose of Rule 84.04(d) is to provide notice to the opponent and the court of the precise matters to be "contended with, answered, and resolved." Leuker, 241

> The trial court erred in concluding that the affidavit of Allen Prince, a management consultant for Fidelity Investments, most clearly explains the appropriate method to be used to determine the value of the marital portion of the SBC pension as of September 15, 2005, and therefore the date upon which the decree of dissolution was entered, and therefore, the date upon which the division of property was to become effective; and that Mr. Prince's affidavit clarifies that the premarital pension benefits accrued to [Husband] during his many years of service for SBC accrues interest and that the interest on the premarital portion of the pension benefits is not considered to be part of the marital portion under the terms of the plan, because the trial court's decision was contrary to the law and exceeds its authority pursuant to Mo. Rev. Stat. § 452.330.5., [sic] in that the trial court dismissed the manner in which the trial court determined the marital portion per the Judgment of Dissolution, which was to take the opening balance of the pension on the day of the marriage and the ending balance of the pension on the date of the divorce to come up with the marital portion of the pension that was needed to ensure an equitable division of marital property.

Wife's Point II states:

> The trial court erred in concluding that the deposition of Rhonda Stone, Director of Pensions at page 21 confirms the statement of Mr. Prince that the marital portion cannot be determined simply by subtracting the value of the pension benefits at the date of the marriage from the value of the pension benefits at the date of the dissolution, because the trial court's decision was not based upon state law as it pertains to division of marital property pursuant to Mo. Rev. Stat. § 452.330.5, in that interest income is considered marital property and Mr. Prince was not acting as a plan fiduciary and does not determine what portion of the pension is marital. The division of the pension benefit pursuant to terms of a qualified domestic relations order ("QDRO") is a matter determined by applicable state law. The Plan has neither the ability nor the legal authority to question whether a particular division of the total pension benefit contained in a QDRO complies with state law; the Plan relies on the Court to make that determination.

6

S.W.3d at 867 (citing <u>Thummel v. King</u>, 570 S.W.2d 679, 686 (Mo. banc 1978)). As the

Supreme Court explained in <u>Thummel</u>:

> Clear statement of the points relied on facilitates full advocacy and affords the opportunity for clarification by meaningful questions directed to the issues stated in the points relied on. If the appellate court is left to search the argument portion of the brief (or even worse, to search the record on appeal) to determine and clarify the nature of the contentions asserted, much more is at stake than a waste of judicial time (even though in this time of increased litigation and heavy caseloads, that alone is sufficient justification for the rules). The more invidious problem is that the court may interpret the thrust of the contention differently than does the opponent or differently than was intended by the party asserting the contention. If that happens, the appellate process has failed in its primary objective of resolving issues raised and relied on in an appeal.

<u>Thummel</u>, 570 S.W.2d at 686.

Wife's points relied do not conform to Rule 84.04(d) because neither "identifies or

explains the specific legal reasons that support the claim of reversible error, and therefore they

arguably preserve nothing for appellate review." <u>Arch Ins. Co. v. Progressive Cas. Ins. Co.</u>, 294

S.W.3d 520, 523 (Mo.App.W.D. 2009) (quotations omitted). Wife's Points I and II allege that

the trial court improperly approved Mr. Prince and Ms. Stone's methods for calculating the

marital portion of the SBC pension account. However, Wife fails to articulate a concise legal

reason explaining how the trial court erred or why the law, in the context of the facts, supports

her claim of reversible error. <u>See, e.g.</u>, <u>Schaefer v. Altman</u>, 250 S.W.3d 381, 384 (Mo.App.E.D.

2008); <u>Kuenz v. Walker</u>, 244 S.W.3d 191, 194 (Mo.App.E.D. 2007). "A point that does not

explain why the legal reasons support the claim of reversible error merits dismissal."[5] <u>Jones v.</u>

<u>Buck</u>, 400 S.W.3d 911, 915 (Mo.App.S.D. 2013).

---

[5] We further note that Wife's points are so unintelligible that this court would have to rewrite them prior to reviewing them. <u>See, e.g.</u>, <u>Washington v. Blackburn</u>, 286 S.W.3d 818, 821 (Mo.App.E.D 2009). "If we cannot competently rule on the merits of an appellant's arguments without first reconstructing the facts and supplementing his legal arguments, then nothing is

7

Additionally, the arguments under each of Wife's points relied on fail to comply with Rule 84.04(e), and equally preserve nothing for review. Pursuant to Rule 84.04(e), the argument must contain, among other things, "a concise statement of the applicable standard of review for each claim of error." Rule 84.04(e); see In re Marriage of Smith, 283 S.W.3d 271, 275 (Mo.App.E.D. 2009). Wife's arguments do not separately state the applicable standard of review for each claim of error. In fact, the standard of review appears nowhere in Wife's appellate brief.

Further, Wife's arguments are analytically insufficient. "An argument must explain why, in the context of the case, the law supports the claim of reversible error. It should advise the appellate court how principles of law and the facts of the case interact." Smith, 283 S.W.3d at 275 (quotation omitted). In the argument following Point I, Wife quotes Section 452.330.5 and describes the limited circumstances in which a trial court may modify a QDRO. This discussion contains Wife's only citations to authority.[6] Wife then asserts that her "Memorandum of Law sets forth the true value of the marital portion of the pension and not the Declaration of Allen Prince." However, Wife fails to cite support for her claim that Mr. Prince's method produces "an inequitable division of the marital property." Likewise, Wife suggests that the trial court must modify QDRO I "to effectuate the expressed intent of the Judgment [of Dissolution]," but she fails to demonstrate how QDRO I is inconsistent with the language of that judgment. See, e.g., Arch Ins. Co., 294 S.W.3d at 524.

---

preserved for review." Elkins v. Elkins, 257 S.W.3d 617, 618 (Mo.App.E.D. 2008) (quotation omitted).

[6] We note, however, that Wife later *mis*quotes Section 452.330.5 for the following proposition: "Under Missouri law, the interest income on separate property which accrues during the marriage is marital property." This principle appears not in the statute, but rather in the trial court's judgment of January 6, 2010, which in turn was quoted by this court in Green, 341 S.W.3d at 173.

In Wife's argument under Point II, she summarizes the same claims she made in regard to Point I. Wife restates her position that the "method Mr. Prince used to determine the marital portion [of the SBC pension account] would lean heavily toward [Husband] and yield an inequitable division of property, inconsistent with the trial court's intent on the date of dissolution and QDRO I . . . ." Wife asserts, without legal analysis or citation to authority, that "[t]he only thing that is needed is to find the exact value of the pension . . . ." To analyze Wife's claim for reversible error in Point II, we would have to speculate on facts and on arguments that have not been made. See Thompson v. Flagstar Bank, FSB, 299 S.W.3d 311, 315 (Mo.App.S.D. 2009). "We simply cannot abandon our proper position of impartiality to assume instead the role of advocate." Shelter Mut. Ins. Co. v. Mitchell, 413 S.W.3d 348, 353 (Mo.App.S.D. 2013).

### *Conclusion*

Wife's brief so substantially fails to comply with the briefing requirements of Rule 84.04 that it preserves nothing for our review. See Smith, 283 S.W.3d at 276. Accordingly, the appeal is dismissed.

_____
Patricia L. Cohen, Presiding Judge

Roy L. Richter, J., and
Robert M. Clayton III, J., concur.