**Terry L. WELLS, Respondent,**

v.

**Stacey L. WELLS, Appellant.**

**No. WD 56334.**

Missouri Court of Appeals, Western District.

Aug. 10, 1999.

Peter Michael Schloss, Liberty, for respondent.

Douglas Lee Miller, Kansas City, for appellant.

PAUL M. SPINDEN, Judge.

Stacey L. Wells appeals the circuit court's dismissal of his motion to modify a Qualified Domestic Relations Order (QDRO). The QDRO affected payment of pension benefits to Wells' former wife, Terry L. Wells, pursuant to a property settlement in the circuit court's decree dissolving the couple's marriage. Stacey Wells contends that the circuit court erred in dismissing his motion to modify the QDRO because he merely wanted the order's terms to effectuate the intent of the court's order regarding distribution of property. We reverse the circuit court's dismissal.

When we review the circuit court's granting of a motion to dismiss, we deem the facts that are properly pleaded to be true and draw all reasonable inferences that can be deduced from them fairly. *Layne, Inc. v. Moody*, 886 S.W.2d 115, 116 (Mo.App.1994).

The circuit court dissolved the Wellses' marriage on August 31, 1995. The circuit court incorporated their agreement concerning distribution of property into its decree. The couple agreed that Terri Wells would receive 50 percent of Stacey Wells' retirement plan with the United Auto Workers as it was valued on the date of dissolution.

On October 30, 1995, the circuit court issued a QDRO regarding Stacey Wells' retirement plan. The QDRO designated Terry Wells as an "alternate payee" under the retirement plan and provided:

> The amount payable to [Terry Wells] with respect to the life income benefits, temporary benefits, and supplemental benefits shall be the amount payable to [Stacey Wells] pursuant to the Plan multiplied by 50 percent and multiplied by a fraction, the numerator of which is 23 (the number of years of service of [Stacey Wells] under the Plan to the date of the Judgment dissolving the marriage of the parties), and the denominator of which is the total number of years of service of [Stacey Wells] under the Plan.

The QDRO also provided:

> [Terry Wells] shall be treated as a surviving spouse under the Plan, and, accordingly, in the event of death of [Stacey Wells] either before or after commencement of retirement benefits, payment shall be made to [Terry Wells]

as provided in the Plan for a surviving spouse.

On May 11, 1998, more than two years after the circuit court entered the QDRO, Stacey Wells filed a motion to modify the QDRO. He asked the circuit court to remove Terry Wells' designation as a surviving spouse from the QDRO because this designation did not appear in either the separation agreement or decree of dissolution and because it was an incorrect representation of the intent of the court's order regarding distribution of property. Terry Wells filed a motion to dismiss Stacey Wells' motion to modify, and the circuit court granted the motion to dismiss.

■ Stacey Wells contends that the circuit court erred in dismissing his motion to modify. He asserts that the QDRO's designation of Terry Wells as surviving spouse was not the parties' intent and was not mentioned in either the separation agreement or decree of dissolution. He alleges that he did not approve the proposed QDRO before attorneys submitted it to the circuit court and that the designation of Terry Wells as the surviving spouse is a significant and severe detriment to his current wife. He argues that removing the designation would not alter the division of property as ordered by the circuit court, but would reflect more accurately the court's order regarding distribution of the property.

Section 452.330.5, RSMo Supp.1998, authorizes the circuit court to modify a QDRO in limited circumstances:

> The court's order as it affects distribution of marital property shall be a final order not subject to modification; provided, however, that orders intended to be qualified domestic relations orders affecting pension, profit sharing and stock bonus plans pursuant to the U.S. Internal Revenue Code shall be modifiable only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order.

This statute grants the circuit court power to modify a QDRO "to establish or to maintain the QDRO's status as 'qualified' under a particular plan or to conform its terms to effectuate the [intent of the court's order regarding distribution of property].": *Seal v. Raw,* 954 S.W.2d 681, 685 (Mo.App.1997).

The parties' settlement agreement indicates that they agreed that Terry Wells should have 50 percent of the value of Stacey Wells' retirement plan at the date of dissolution. Stacey Wells will not receive payments from the plan until he retires. Without the designation of Terry Wells as a surviving spouse, her interest in the plan would be lost if Stacey Wells died before retirement and would end when he died after retiring. 2 MISSOURI FAMILY LAW §§ 15.17, 15.23 (5th ed., Mo. Bar 1997, 1999). Hence, we disagree that Terry Wells should not have been designated as a surviving spouse. Terry Wells is entitled to her portion of Stacey Wells' retirement plan without regard for when Stacey Wells dies. Her designation as a surviving spouse protects her interest in the retirement plan. To hold otherwise, would be an alteration of the court's order regarding distribution of marital property, and § 452.330.5 prohibits it.

■ A problem arises, however, from the QDRO's failure to limit the amount of Terry Wells' benefits as the surviving spouse. The designation of Terry Wells as the surviving spouse "prevents a subsequent spouse from being a 'surviving spouse' at least to the extent benefits have been set over to the former spouse." *Id.* at § 16.55. The provision in the QDRO designating Terry Wells as the surviving spouse merely says "payment shall be made to [Terry Wells] as provided in the Plan for a surviving spouse." Thus, to the extent that Terry Wells' designation as a surviving spouse in the QDRO gives her the right to receive the "full surviving spouse benefit," such would seem to be contrary to the property agreement and

the judgment of the decree of dissolution. Indeed, it seems to set up Terry Wells for a windfall in the event of Stacey Wells' death. The property agreement merely gave Terry Wells 50 percent of the value of Stacey Wells' retirement plan as of the date of dissolution; therefore, Terry Wells should be entitled, it seems, only to that portion of the surviving spouse benefit.

Terry Wells asserts that, because Stacey Wells, by and through his attorney, approved the QDRO, Stacey Wells waived any complaint that he may have had regarding the QDRO. She also asserts that the circuit court lacks jurisdiction to re-open the QDRO because Stacey Wells did not appeal within 30 days after the circuit court's entry of the QDRO and because Stacey Wells did not timely file a motion to set aside, amend, correct or vacate the QDRO.

■ We disagree. Section 452.330.5 authorizes the circuit court to modify a QDRO, and it places no time limits or restrictions upon the circuit court as to when this can be done. To modify a QDRO, a party must establish that the circuit court would be modifying the QDRO "to establish or to maintain the QDRO's status as 'qualified' under a particular plan or to conform its terms to effectuate the [intent of the court's order regarding distribution of property]." *Seal,* 954 S.W.2d at 685. Stacey Wells' motion to modify alleges such facts. Hence, Terry Wells' contentions are without merit.

Pursuant to § 452.330.5, the circuit court had jurisdiction to revise or to conform the terms of the QDRO "so as to effectuate the expressed intent of the order." Hence, the circuit court erred in dismissing Stacey Wells' motion to modify. We, therefore, reverse and remand to the circuit court for further proceedings.

EDWIN H. SMITH, Presiding Judge, and FOREST W. HANNA, Judge, concur.