Julia BROOKS, Petitioner/Respondent,

v.

**Jeffrey M. BROOKS,
Respondent/Appellant.**

**No. ED 80064–01.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 14, 2003.

Lawrence Gerard Gillespie, Terri J. Johnson, Gillespie, Hertlage & Coughlin, Clayton, MO, for appellant.

Nathan S. Cohen, Benicia Ann Baker–Livorsi, Clayton, MO, for respondent.

SHERRI B. SULLIVAN, P.J.

*Introduction*

Jeffrey M. Brooks (Husband) appeals from a Qualified Domestic Relations Order (QDRO) and Judgment entered by the tri-

al court to implement the division of Husband's pension as set out in the Decree of Dissolution (Decree) of the marriage of Husband and Julia Brooks (Wife). We affirm.

### Procedural Background

On June 25, 2002, we dismissed this appeal without prejudice finding that pursuant to Missouri Rule of Civil Procedure 74.01, the QDRO did not constitute a judgment for purposes of appeal. The Missouri Supreme Court granted transfer pursuant to Mo. Const. Art. V, sec. 10, to consider whether the QDRO was appealable. On March 4, 2003, said Court issued an opinion determining that the QDRO was appealable, and retransferred the case to us for consideration on the merits. Accordingly, we now consider the merits of Husband's appeal.

### Factual Background

On October 7, 1994, the trial court entered its Decree dissolving the marriage of Husband and Wife. Paragraph ·20 of the Decree provides:

Wife, as Alternate Payee, shall be, and hereby is assigned 50% of any benefits, whether lump sum payments or a monthly annuity, payable to Husband, as Participant, under the Plumbers Union Local No. 35 Retirement Plan, multiplied by a fraction the numerator of which is the number of years Husband was a member of Plumbers Union Local No. 35 during the parties' marriage and the denominator of which is the number of years Husband was a member of Plumbers Union Local No. 35 as of the date payments commence to Husband, but not exceed a factor of one, as more specifically provided in a Qualified Domestic Relations Order to be prepared by counsel for Wife and submitted to this Court for signature.

On June 14, 2001, the trial court entered a QDRO providing Wife with survivor benefits as follows:

III. Death Benefits

A. In the event that the participant predeceases the alternate payee prior to the participant's earliest retirement date, the alternate payee shall be deemed to be a surviving spouse, as defined in the Plan, and shall be entitled to receive the portion of the death benefit payable under the plan with respect to the participant's entire accrued benefit prior to division. The benefit paid under this paragraph shall be in lieu of any other benefit provided under this order.

On August 20, 2001, Husband filed a Notice of Appeal. On November 1, 2001, the trial court, apparently *sua sponte,* entered a Nunc Pro Tunc Order amending the QDRO to be a Judgment.

### Point on Appeal

■ In his point on appeal, Husband asserts that the trial court erred in entering a QDRO which awarded Wife survivor benefits in excess of those necessary to implement the division of property set forth in the Decree because the QDRO is based upon a misapplication of the law and is in excess of the trial court's jurisdiction in that full survivor benefits set up a possible windfall for Wife in the event of Husband's death and prevent a subsequent spouse of Husband from receiving survivor benefits.

### Standard of Review

■ The judgment of the trial court will be affirmed unless there is no substantial evidence to support it; it is against the weight of the evidence; or it erroneously

applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976).

## Discussion

We initially note that Husband was free to pursue a motion to modify the QDRO in the trial court. There is no time limit on moving to modify a QDRO. *Wells v. Wells,* 998 S.W.2d 165, 168 (Mo.App. W.D.1999).

> Section 452.330.5 authorizes the circuit court to modify a QDRO, and it places no time limits or restrictions upon the circuit court as to when this can be done. To modify a QDRO, a party must establish that the circuit court would be modifying the QDRO "to establish or to maintain the QDRO's status as 'qualified' under a particular plan or to conform its terms to effectuate the [intent of the court's order regarding distribution of property]."

*Id. See also, Miles v. Miles,* 43 S.W.3d 876, 879 (Mo.App. W.D.2001). However, since we have a final judgment before us, we proceed with the appeal.

■ When a circuit court enters a QDRO to enforce a party's right to receive pension benefits accorded in its original decree, we will not deem the QDRO to be modifying the decree's terms because the decree continues to exist and to operate in governing the parties' rights and responsibilities. *Seal v. Raw,* 954 S.W.2d 681, 685 (Mo.App. W.D.1997).

Husband cites *Wells* in support of his argument that the QDRO entered by the circuit court in this case did, indeed, modify the terms of the Decree. In *Wells,* Mr. Stacey Wells, the former husband, sought to modify a QDRO entered more than 2 years previously. Specifically, Mr. Wells sought to remove his former wife, Mrs. Terry Wells, as the designated surviving spouse from the QDRO. The Wells' decree of dissolution provided that Mrs. Wells would receive 50 percent of the value of Mr. Wells' retirement plan as of the date of dissolution. The QDRO provided that Mrs. Wells was granted *full survivorship benefits* in the event Mr. Wells predeceased Mrs. Wells. The *Wells* court discussed the problem with the language of the QDRO as follows:

> The parties' settlement agreement indicates that they agreed that Terry Wells should have 50 percent of the value of Stacey Wells' retirement plan at the date of dissolution. Stacey Wells will not receive payments from the plan until he retires. Without the designation of Terry Wells as a surviving spouse, her interest in the plan would be lost if Stacey Wells died before retirement and would end when he died after retiring. 2 MISSOURI FAMILY LAW §§ 15.17, 15.23 (5th ed., Mo. Bar 1997, 1999). Hence, we disagree that Terry Wells should not have been designated as a surviving spouse. Terry Wells is entitled to her portion of Stacey Wells' retirement plan without regard for when Stacey Wells dies. Her designation as a surviving spouse protects her interest in the retirement plan. To hold otherwise, would be an alteration of the court's order regarding distribution of marital property, and § 452.330.5 prohibits it.
>
> A problem arises, however, from the QDRO's **failure to limit** the amount of Terry Wells' benefits as the surviving spouse. The designation of Terry Wells as the surviving spouse "prevents a subsequent spouse from being a 'surviving spouse' at least to the extent benefits have been set over to the former spouse." Id. at § 16.55. The provision in the QDRO designating Terry Wells as the surviving spouse merely says "payment shall be made to [Terry Wells] as provided in the Plan for a surviving spouse." Thus, to the extent that Terry Wells' designation as a surviving spouse

in the QDRO gives her the right to receive the "**full** surviving spouse benefit," such would seem to be contrary to the property agreement and the judgment of the decree of dissolution. Indeed, it seems to set up Terry Wells for a windfall in the event of Stacey Wells' death. The property agreement merely gave Terry Wells **50 percent** of the value of Stacey Wells' retirement plan as of the date of dissolution; therefore, Terry Wells should be entitled, it seems, only to that portion of the surviving spouse benefit.

*Wells*, 998 S.W.2d at 167–168 (emphasis added).

A review of the QDRO in the instant case does not reveal that Wife would receive any more than 50 % of the value of Husband's pension as of the date of their dissolution in the event of Husband's death, precisely as was set forth in the Decree. The language of the QDRO clearly limits the amount of benefits Wife would receive as the surviving spouse to 50 %. Paragraph III of the QDRO sets forth the Death Benefits, and states that Wife, as Alternate Payee, becomes a Surviving Spouse in the event of Husband's death, and shall be entitled to receive the "portion" of the death benefit payable under the Plan with respect to Husband's entire accrued benefit prior to division. This "portion" refers to the 50% portion of benefits awarded to Wife in the Decree as an Alternate Payee (as opposed to as a Surviving Spouse), and does not expand upon it. This "portion" language is repeated throughout the QDRO, and merely reiterates Wife's benefits that she would receive as an Alternate Payee:

WHEREAS, pursuant to a properly executed Separation Agreement or Property Settlement the parties have agreed upon a division of the accrued pension benefits and Participant has agreed to assign *a portion* **of the vested pension benefit** to Alternate Payee . . .

and

WHEREAS, this Court has by its Decree of Dissolution of Marriage divided and distributed *a portion* **of the said retirement benefits to the Alternate Payee** . . .

We see nothing in the QDRO that ever changes the amount of Wife's "portion," i.e., 50% of the present value of Husband's pension at the time of dissolution, whether Wife receives that "portion" as a Surviving Spouse in the form of Death Benefits, or as an Alternate Payee in the form of a lump sum payment.

We also note that Paragraph IV.A.2 of the QDRO states that nothing in the QDRO shall require the Plan to provide *increased benefits* to an alternate payee. The *Wells* case did not mention any such provision in the QDRO at issue there.

Based on the foregoing, we find that the QDRO in the instant case can be distinguished from the one at issue in *Wells*. Unlike the QDRO in *Wells*, the language contained in the QDRO in this case, as set forth in the previous paragraphs, contains language limiting the amount of Wife's benefits as the surviving spouse to the benefits set forth in the Decree. As such, the result in *Wells* is not controlling here. The QDRO in the instant case does not award Wife survivor benefits in excess of those necessary to implement the division of property as set forth in the Decree, and further, does not set up a possible windfall for Wife in the event of Husband's death, preventing a subsequent spouse of Husband from receiving survivorship benefits. Husband has not shown any evidence to the contrary. Husband has only cited a case involving a QDRO which contained *some* similar language to the QDRO in the case at bar, but our analysis of the QDRO *as a whole* indicates that it sufficiently

limits Wife's survivorship benefits, unlike the QDRO in *Wells*. A central tenet of property settlement agreement construction is that the court must consider *the whole instrument*. *Seal*, 954 S.W.2d at 683.

For the foregoing reasons, Husband's point on appeal is denied.[1]

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

LAWRENCE G. CRAHAN and LAWRENCE E. MOONEY, JJ., concur.

1. Wife argues that ERISA preempts state law with respect to the interpretation of survivor benefits under defined benefit and defined contribution plans. We are making no such interpretation in the case at bar. We are only interpreting the language of the Decree and the QDRO. As such, this argument is without merit.