**Elizabeth KUBA, Appellant,**

v.

**Mark KUBA, Respondent.**

**No. WD 75041.**

Missouri Court of Appeals,
Western District.

June 18, 2013.

Michael C. McIntosh, Independence, MO, for appellant.

Jeffrey S. Royer, Blue Springs, MO, for respondent.

Before Division Two: ALOK AHUJA, P.J., and KAREN KING MITCHELL and CYNTHIA L. MARTIN, JJ.

ALOK AHUJA, Judge.

In 2008, the circuit court entered a decree dissolving the marriage of Elizabeth Kuba (Wife) and Mark Kuba (Husband). The decree awarded Wife a portion of Husband's military retirement benefits, and the court subsequently entered a "Military Qualifying Judgment Court Order" to implement the division of Husband's retirement benefits. Three years later, Wife filed a motion to modify the Qualifying Order, to add a provision requiring Husband to designate her as the beneficiary of survivor benefits associated with his military retirement. The circuit court denied the motion, and Wife appeals. We affirm.

## Background

Mark and Elizabeth Kuba had been married for twenty-two years when their marriage was dissolved by a Judgment of Dissolution in February 2008. The couple had three children during the marriage. At the time of the dissolution, their eldest son was a sophomore in college; their other two sons were minors who lived with Wife.

Husband, who was fifty-one years old at the time of the dissolution, was a member of the Army Reserves and on active duty. He began serving in the military on March 8, 1985, approximately a year before the parties married on April 6, 1986.

The parties agreed to a property settlement and a stipulated parenting plan, both of which were incorporated into the dissolution judgment. With respect to Husband's military retirement benefits, the judgment provided:

The husband has pension and military retirement with the Army. Wife shall receive one-half of the marital interest in

Husband's pension and military retirement with the Army which accrued through Husband's employer during the time of the marriage. Wife shall receive her marital interest in said plans through a Qualified Domestic Relations Order which will be signed by the Court.

In April 2008, the court entered a "Military Qualifying Judgment Court Order" (the "Qualifying Order") that implemented the division of Husband's military retirement benefits. The Order stated that it was intended to be a qualifying order under the Uniformed Services Former Spouses' Protection Act ("USFSPA"), 10 U.S.C. § 1408. The Qualifying Order provided:

7. **Amount of Payments:** The Former Spouse is awarded fifty percent (50%) of the disposable military retired pay the Member would have received had the Member become eligible to receive retired pay on the date he attained age sixty (60), with the rank of Colonel (0–6), with [2,178] reserve retirement points, and with [22] years of service for basic pay purposes.

In addition to the above, the Former Spouse shall receive a proportionate share of any post-retirement cost of living adjustments ("COLA") made to the Member's benefits on or after the date of his retirement.

8. **Duration of Payments:** The monthly payments set forth above shall commence to the Former Spouse as soon as administratively feasible following the commencement of Member's disposable retired pay and shall continue during the joint lives of the parties and to the extent permitted under law, irrespective of the future marital status of either of them. Payments shall terminate only upon the death of either Member or Former Spouse.

Neither the dissolution judgment nor the Qualifying Order specifically addressed any survivor benefits associated with Husband's military retirement benefits. The Qualifying Order necessarily excluded such survivor benefits, however, since it provided that payments to Wife would cease on Husband's death.

In 2011, Wife filed a motion to modify the Qualifying Order, to add the following language:

> ELIZABETH A. HUNGERFORD–KUBA, former spouse of Mark M. Kuba, shall be designated as beneficiary of Mark M. Kuba, with respect to the awarded portion of Mark M. Kuba's interest in the United States Army Retirement System, for purposes of the Reserve Component Survivor Benefit Plan ("RCSBP") and/or the Survivor Benefit Plan ("SBP") coverage for the benefit of Elizabeth A. Hungerford–Kuba following the death of Mark M. Kuba.

Husband opposed Wife's motion, arguing that Wife was seeking a substantive modification of the property division in the parties' dissolution decree, and that the trial court lacked authority to modify the Qualifying Order in this fashion, three years after its entry.

After hearing argument of counsel, the circuit court denied Wife's motion to modify the Qualifying Order. Wife appeals.

## Analysis

### I.

Wife contends that the trial court misapplied the law in denying her motion to modify the Qualifying Order to provide her with survivorship benefits. She claims that the modification she requested "would have merely given to [Wife] what was her expected portion of marital property as determined by the original Judgment of Dissolution."

Husband argues that, whatever the substantive merits of Wife's argument, the trial court lacked the authority to modify the Qualifying Order, because that Order is not a "Qualified Domestic Relations Order" or "QDRO" subject to modification under § 452.330.5, RSMo. If Husband were correct, we would be required to affirm without addressing the merits of Wife's arguments. We accordingly begin by addressing Husband's argument concerning the trial court's authority to modify the Qualifying Order.

Section 452.330.5, RSMo, provides:

> The court's order as it affects distribution of marital property shall be a final order not subject to modification; provided, however, that orders intended to be qualified domestic relations orders affecting pension, profit sharing and stock bonus plans pursuant to the U.S. Internal Revenue Code shall be modifiable only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order.

Thus, except for "orders intended to be qualified domestic relations orders ... pursuant to the U.S. Internal Revenue Code," orders affecting the distribution of marital property are non-modifiable once they become final.

Husband argues that the Qualifying Order is not considered to be a QDRO under the Internal Revenue Code, and that it is therefore not subject to modification under § 452.330.5. Husband cites 26 U.S.C. § 414(p), the provision of the Internal Revenue Code governing Qualified Domestic Relations Orders. In particular, Husband relies on 26 U.S.C. § 414(p)(9), which provides that "[t]his subsection shall not apply to any plan to which section 401(a)(13) does not apply." The Treasury Department's implementing regulations

specify that 26 U.S.C. § 401(a)(13) *"does not apply to a governmental plan,* within the meaning of section 414(d)[.]" 26 C.F.R. § 1.401(a)–13(a) (emphasis added). 26 U.S.C. § 414(d), provides, in turn, that "[f]or purposes of this part, the term 'governmental plan' means a plan established and maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." Husband argues that, because the Qualifying Order entered in this case addresses benefits payable under a "governmental plan," the Order is excluded from the definition of a "QDRO" by operation of 26 U.S.C. § 414(p)(9).

Husband's argument ignores 26 U.S.C. § 414(p)(11), which provides:

> [f]or purposes of this title, a distribution or payment from a governmental plan (as defined in subsection (d)) ... shall be treated as made pursuant to a qualified domestic relations order if it is made pursuant to a domestic relations order which meets the requirement of clause (i) of paragraph (1)(A).

Clause (i) of paragraph (1)(A) provides:

> The term "qualified domestic relations order" means a domestic relations order—
>
> (i) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan. . . .

26 U.S.C. § 414(p)(1)(A)(i). This would appear to encompass the Military Qualifying Judgment Court Order at issue in this case.

*Platt v. Commissioner,* 95 T.C.M. (CCH) 1084, 2008 WL 268588 (2008), confirms this. In *Platt,* the Tax Court explained that although orders affecting "governmental plans" were initially excluded from treatment as QDROs by 26 U.S.C. § 414(p)(9), that exclusion was eliminated when § 414(p)(11) was enacted in 1989:

> The QDRO provisions that Congress enacted in 1984 did not apply to governmental plans. See sec. 414(p)(9). . . . In 1989, Congress added section 414(p)(11) to the Code. . . . Section 414(p)(11) provides that "a distribution or payment from a governmental plan ... shall be treated as made pursuant to a qualified domestic relations order if it is made pursuant to a domestic relations order which meets the requirement of clause (i) of paragraph (1)(A)" of section 414(p).
>
> . . . .
>
> Congress added sec. 414(p)(11) to the Code in order "to conform generally [the tax rules relating to transfers of interests in a governmental plan] to the tax rules applicable to other qualified plans pursuant to the Retirement Equity Act."

2008 WL 268588, at *6 & n. 31 (other footnotes and citations omitted; bracketed text added by *Platt* ). *Platt* holds that,

> [w]ith respect to governmental plans, ... a domestic relations order qualifies under sec. 414(p) as a QDRO if that order creates or recognizes the existence of an alternate payee's right, or assigns to an alternate payee the right, to receive all or a portion of the benefits payable with respect to a participant under a plan. See sec. 414(p)(11).

*Id.* at *6 n. 32.

■ Under 26 U.S.C. § 414(p)(11), the Qualifying Order is treated as a QDRO under the Internal Revenue Code, and is therefore subject to modification under § 452.330.5, RSMo, because it assigned to an alternate payee the right to receive a portion of the benefits payable under a governmental retirement plan. We accordingly reject Husband's claim that the

trial court lacked authority to modify the Qualifying Order under § 452.330.5.[1]

## II.

Because the Qualifying Order was subject to modification under § 452.330.5, RSMo, we now turn to Wife's argument that such a modification was necessary to fully implement the division of Husband's military retirement benefits ordered in the initial dissolution decree.

■■■ Section 452.330.5, RSMo, provides that a QDRO "shall be modifiable only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order." Here, Wife sought to modify the Qualifying Order to require Husband to designate her as a surviving spouse in order to "conform its terms so as to effectuate the expressed intent of the order." To determine if an amendment to a QDRO is required to "effectuate the expressed intent of the order," "we look at the original order, including the dissolution decree." *In re Marriage of Green*, 341 S.W.3d 169, 175 (Mo.App. E.D. 2011). "Interpretation of a dissolution judgment and a QDRO is an issue of law that we review *de novo*." *Id.* at 174.

In this case, the dissolution decree specified that "Wife shall receive one-half of the marital interest in Husband's pension and military retirement with the Army which accrued through Husband's employer during the time of the marriage." Wife argues that, in order for her to receive the share of Husband's military retirement benefits which was awarded to her in the dissolution decree, Husband must be required to designate her as the beneficiary of the Survivor Benefit Plan associated with those retirement benefits, so that she will continue to receive her share of Husband's retirement pay, even if he predeceases her.

### A.

■■■ Resolution of this appeal requires some understanding of the nature of military retirement benefits, and their treatment under state dissolution law. In 1981, the Supreme Court of the United States held that federal law prohibited state courts from treating military retired pay as marital property subject to division in a dissolution action. *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). In response, Congress passed the Uniformed Services Former Spouses' Protection Act ("USFSPA"), 10 U.S.C. § 1408. *See Starrett v. Starrett*, 703 S.W.2d 544, 546–47 & n. 5 (Mo.App. E.D. 1985); Patricia K. Hinshaw, *Navigating the Uniformed Services Former Spouses' Protection Act*, 19 S.C. Law. 32, 34 (Jan. 2008). The USFSPA authorizes a state court to treat a service member's "disposable retired pay . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1). Missouri considers

---

**1.** We note that at least two prior Missouri decisions have held that orders implementing the division of military or other government retirement benefits *were* QDROs subject to modification under § 452.330.5, although neither case addressed the specific argument Husband makes here. *See Wilson v. Lilleston*, 290 S.W.3d 795, 800 (Mo.App. W.D.2009) (modification of QDRO awarding wife a share of husband's pension from United States Post-

al Service was warranted to effectuate expressed intent of dissolution judgment); *Young v. Young*, 152 S.W.3d 887, 890 (Mo. App. W.D.2005) (if court's order awarding $412 per month to wife was to come from husband's military pension and was intended to be a QDRO, "the circuit court is not without jurisdiction and may modify its decree after declaring it to be a QDRO").

disposable retired pay earned as a result of military service during the marriage to be marital property, subject to division in a dissolution proceeding. *Morgan v. Morgan,* 249 S.W.3d 226, 230 (Mo.App. W.D. 2008); *In re Marriage of Strassner,* 895 S.W.2d 614, 616 (Mo.App. E.D.1995); *Starrett,* 703 S.W.2d at 547.

■ When a service member dies, payment of military retirement benefits generally ceases. *See* Hinshaw, 19 S.C. LAW. at 38; 10 U.S.C. § 1408(d)(4).[2] The Survivor Benefit Plan (SBP), established by 10 U.S.C. §§ 1447–1455, is an annuity plan under which a surviving spouse or other designated beneficiary can continue to receive a monthly benefit following the death of a service member. *In re Smith,* 148 Cal.App.4th 1115, 56 Cal.Rptr.3d 341, 348 (2007) (citing 10 U.S.C. § 1450(a)).[3] With respect to a spouse or former spouse, the annuity payments generally cease upon the death of the spouse or former spouse, or their remarriage before reaching age 55. 10 U.S.C. § 1450(b). The maximum coverage available for beneficiaries under the SBP is specified in 10 U.S.C. § 1451(a)(1)(A).

■■ Once the service member begins receiving retirement pay, premiums for participation in the SBP program are withheld from the member's monthly retired pay. *Smith,* 56 Cal.Rptr.3d at 348 (citing 10 U.S.C. § 1452). Premium amounts are specified in 10 U.S.C. § 1452. The "disposable retired pay" subject to division in a dissolution action is determined by taking the monthly retired pay to which the service member is entitled, less certain deductions, including any deduction for Survivor Benefit Plan coverage. *Strassner,* 895 S.W.2d at 616 (citing 10 U.S.C. § 1408(a)(4)).[4] Thus, where a retired service member's retirement benefits have been divided by a dissolution decree, any premiums for providing SBP coverage to a former spouse would come "off the top," before the division of disposable retired pay between the service member and his or her former spouse.

■ "Enrollment in the plan is automatic for military personnel who are entitled to retired pay, unless they affirmatively opt out of the Survivor Benefit Plan."

---

2. Section 1408(d)(4) provides:

Payments from the disposable retired pay of a member pursuant to this section shall terminate in accordance with the terms of the applicable court order, but not later than the date of the death of the member or the date of the death of the spouse or former spouse to whom payments are being made, whichever occurs first.

3. The Reserve Component Survivor Benefit Plan (RCSBP) extends eligibility for the survivor benefit program to Reserve Component members. 10 U.S.C. § 1448(a)(1)(B). For the sake of clarity, in this opinion we refer to the RCSBP and the SBP collectively as "the Survivor Benefit Plan" or "SBP." The two plans differ in some respects *(i.e.,* how premiums are calculated, when coverage may be elected, and the coverage options available), but those differences do not impact our analysis. *See* John E. Kirchner, *Division of Mili-*

*tary Retired Pay,* 43 FAM. L.Q. 367, 411 (2009); 7B U.S. Dep't of Def. Fin. Mgmt. Reg. §§ 5401, *et seq.* (April 2012), *available* at http://comptroller.defense.gov/fmr/current/07 b/07b_54.pdf.

4. Pursuant to § 1408(a)(4)(D), the SBP premium is a valid deduction in determining disposable retired pay to be paid to a former spouse under court order *only* if the former spouse is the SBP beneficiary. *See* James N. Higdon, *The Survivor Benefit Plan: Its History, Idiosyncrasies, Coverages, Cost, and Applications,* 43 Fam. L.Q. 439, 466 (2009). This precludes the scenario where a former spouse would be paying part of the cost of an annuity that only benefits a service member's new spouse. *Id.; see* also 7B U.S. Dep't of Def. Fin. Mgmt. Reg. §§ 290701(A)(5) & (B)(4) (December 2010), *available at* http:// comptroller.defense.gov/fmr/current/07b/07b_ 29.pdf.

*Holmes v. United States,* 98 Fed.Cl. 767, 770 (2011) (citing 10 U.S.C. § 1448(a)(1)(A), (2)(A)). "By default, benefits are paid to an eligible surviving spouse." *Id.* (citing 10 U.S.C. § 1450(a)). "Spousal consent or a court order is required for a married servicemember to opt for less than the maximum coverage at the time of retirement." Carl O. Graham, *An Introduction to Family Law and the Military,* 37 COLO. LAW. 69, 72 (Oct.2008); 10 U.S.C. § 1448(a)(3)(A).

 SBP coverage for a *former* spouse is not automatic, however, but must be affirmatively elected. An eligible participant may voluntarily elect to name a former spouse as the SBP beneficiary. *Smith,* 56 Cal.Rptr.3d at 348 (citing 10 U.S.C. § 1448(b)(2), (b)(3)). A member also may be required by court order to provide an SBP annuity to a former spouse as part of a dissolution judgment. *Id.* (citing 10 U.S.C. § 1450(f)(4)). An election designating a former spouse as beneficiary precludes the member from designating a new wife or any other former spouses as additional beneficiaries. *Id.* (citing 10 U.S.C. § 1448(b)(2)(B), (C)). If a service member is required by court order to provide an SBP annuity to a former spouse and he fails or refuses to make such an election, the member shall be "deemed" to have made such an election if the Secretary receives a written request from the former spouse and a copy of the court order within one year of the date of such court order. *Holmes,* 98 Fed.Cl. at 770 (citing 10 U.S.C. §§ 1450(f)(3)(A), (C)).

**B.**

In arguing that a modification of the Qualifying Order was necessary to require Husband to designate her as the beneficiary under the Survivor Benefit Plan, Wife

relies heavily on our decision in *Wells v. Wells,* 998 S.W.2d 165 (Mo.App. W.D. 1999). In *Wells,* this Court upheld a provision of a QDRO that required a former wife to be designated as the surviving spouse in her ex-husband's retirement plan, even though, as in this case, the dissolution decree did not address the issue. In *Wells,* the parties' property settlement agreement, which was incorporated into the dissolution decree, specified that the former wife "would receive 50 percent of [husband's] retirement plan with the United Auto Workers as it was valued on the date of dissolution." *Id.* at 166. The QDRO, entered months later, included a provision designating the former wife as the beneficiary of the survivor benefits afforded under the husband's retirement plan. *Id.* at 166–67.

More than two years after entry of the QDRO,[5] the husband filed a motion to modify it to remove the surviving-spouse provision. The husband argued that survivorship rights were not mentioned in the dissolution decree, and therefore the QDRO "was an incorrect representation of the intent of the court's order regarding distribution of property." *Id.* at 167. The circuit court dismissed the motion, and husband appealed. *Id.*

This Court determined that the QDRO could not be modified to remove the surviving-spouse provision, because designation of the former wife as husband's surviving spouse was necessary to provide the former wife with the property that had been awarded to her in the decree. The Court explained:

> The parties' settlement agreement indicates that they agreed that [former wife] should have 50 percent of the value of [husband's] retirement plan at the

5. *Wells* explained that § 452.330.5, RSMo, "places no time limits or restrictions upon the circuit court as to when" a QDRO can be modified. 998 S.W.2d at 168.

date of dissolution. [Husband] will not receive payments from the plan until he retires. Without the designation of [former wife] as a surviving spouse, her interest in the plan would be lost if [husband] died before retirement and would end when he died after retiring. Hence, we disagree that [former wife] should not have been designated as a surviving spouse. [Former wife] is entitled to her portion of [husband's] retirement plan without regard for when [husband] dies. Her designation as a surviving spouse protects her interest in the retirement plan. To hold otherwise, would be an alteration of the court's order regarding distribution of marital property, and § 452.330.5 prohibits it. *Id.; see also Brooks v. Brooks*, 293 S.W.3d 447, 450 (Mo.App. E.D.2003) (following *Wells*, and affirming a QDRO which designated a non-employee former spouse as a surviving spouse for purposes of death benefits under a retirement plan, even though the dissolution decree did not explicitly address survivor benefits; "[w]e see nothing in the QDRO that ever changes the amount of Wife's 'portion,' i.e., 50% of the present value of Husband's pension at the time of dissolution, [as awarded in the dissolution decree,] whether Wife receives that 'portion' as a Surviving Spouse in the form of Death Benefits, or as an Alternate Payee in the form of a lump sum payment").[6]

As in *Wells*, the dissolution decree in this case broadly awarded Wife "one-half of the marital interest in Husband's pension and military retirement with the Army." Like the decree in *Wells*, the dissolution decree entered in this case does not provide that Wife's interest in Husband's retirement plan would terminate on Husband's death, although it also does not expressly require that Wife be designated as Husband's survivor.

Despite the superficial similarities between this case and *Wells*, however, we conclude that this case is distinguishable from *Wells*, and that the opposite result is warranted here. In *Wells*, the Court viewed the provision of survivor benefits as merely implementing the division of husband's retirement benefits ordered in the original dissolution decree. Here, by contrast, designating Wife as Husband's beneficiary under the Survivor Benefit Plan would have significant substantive consequences, which were not contemplated or addressed by the parties or by the court at the time the dissolution decree was entered. Because the dissolution decree did not affirmatively require Husband to provide Wife with SBP coverage, such coverage cannot be ordered by a post-judgment QDRO, since a QDRO is authorized only to implement the property division previously ordered, not to substantively alter a dissolution decree's division of marital property.

We reach this result based on two principal features of the SBP program, which apparently were not present in *Wells*.[7] *First*, there is a cost associated

---

6. Although *Wells* held that the QDRO properly required the wife to be designated as husband's survivor, the Court ordered that the QDRO be modified to designate the former wife as husband's survivor only with respect to the share of husband's retirement benefits awarded to her in the dissolution decree; failing to limit the former wife's survivorship rights would "set up [the former wife] for a windfall in the event of [husband's] death." 998 S.W.2d at 167–68.

7. *Wells* does not describe the particular features of the survivor benefits available in that case. However, the Court's failure to mention any features similar to the aspects of the SBP program we discuss suggests that similar features were not present in the United Auto Workers pension program involved in *Wells*.

with electing an SBP annuity, and that cost is deducted *before* the determination of the "disposable retired pay" which can be divided in a dissolution decree. Because the premium for an SBP annuity is taken "off the top," if the circuit court were to now order Husband to designate Wife as his beneficiary under the SBP program, he would necessarily be required to "pay" part of the cost of an annuity that will benefit only Wife (because his share of the disposable retired pay will be reduced due to the SBP premium).[8] Our cases "do not establish a rule that the spouse designated as a beneficiary of a survivor's benefit option bears the entire cost. Rather, this determination is left to the trial court's discretion, taking into consideration all the relevant factors surrounding the distribution of marital property." *Williams v. Williams*, 17 S.W.3d 559, 562–63 (Mo.App. E.D.1999). In prior cases, trial courts have exercised this discretion by adjusting the spouses' relative shares of retirement benefits, so that the beneficiary-spouse pays the cost of acquiring survivor benefits.[9] In this case, however, the trial court has been denied the opportunity to exercise its discretion to take account of the cost of survivor benefits, and make any adjustment it deemed necessary to the division of other marital property, because the parties' dissolution decree, and the division of their property (including Husband's military retirement benefits), is long-since final. It would be unfair to Husband to now require him to pay a portion of the cost of providing Wife with SBP benefits, when the dissolution decree did not order him to do so, and there is now no way to adjust the property division between the parties to impose that cost solely on Wife.[10]

*Second*, the SBP program permits only one surviving spouse or former spouse to be designated as a beneficiary. *See* 10 U.S.C. § 1448(b)(2). Therefore, identifying Wife as Husband's beneficiary for purposes of the Survivor Benefit Plan would prevent Husband from providing any survivor benefit to his current spouse. We recognize that, in this case, the trial court may well have chosen to require Husband to designate Wife as his SBP beneficiary, even if that designation prevented a later spouse from receiving survivor benefits, given the substantial portion of Husband's military retirement benefits which were marital property. But this is a decision that the trial court should have been given the opportunity to make at the time the original dissolution decree was entered, considering all of the relevant circumstances. There may well be cases in which a trial court deems it inappropriate to order that SBP benefits be provided to a former spouse, because of the effect such a designation would have on a service member's ability to provide SBP benefits to

---

**8.** This case thus stands in contrast to *Conaway v. Conaway*, 899 S.W.2d 574 (Mo.App. W.D.1995), which concluded that a trial court abused its discretion "in refusing [in a dissolution decree] to award [wife] the survivor benefit option in her husband's pension plan," where the wife offered to pay the entire cost of the survivor benefit election. *Id.* at 576.

**9.** *See, e.g., Gendron v. Gendron*, 996 S.W.2d 668, 671 (Mo.App. W.D.1999); *Weiss v. Weiss*, 702 S.W.2d 948, 951–53 (Mo.App. W.D.1986).

**10.** As explained in the text, a trial court should be given the opportunity, at the time of entry of a dissolution decree, to decide how to allocate the cost of purchasing SBP benefits. Besides raising allocation issues, the cost of SBP benefits may factor into the trial court's decisionmaking in another way: it may persuade the court not to order an SBP beneficiary designation *at all*, when the cost of the SBP annuity is compared to the cost of commercial life insurance or similar products. *See* Mark E. Sullivan, THE MILITARY DIVORCE HANDBOOK 576 (2d ed.2011).

others (for example, where the marital portion of a service member's disposable retired pay is relatively small, due to the brief duration of the marriage, and/or the brief duration of the service member's military service *during* the marriage). Wife argues for a "one size fits all" rule: whenever a dissolution decree divides military retirement benefits, but is silent as to SBP coverage, it *must* be interpreted to require that the non-service member be designated as a former-spouse beneficiary under the SBP. Accepting Wife's argument would deny trial courts the discretion to determine whether SBP coverage should be required in particular cases, and, if so, in what amount.[11]

By statute, the payment of military retirement pay terminates on a service member's death, and providing SBP benefits to a former spouse requires affirmative action by the service member. Thus, the "default" state of affairs, if no action is taken, is that a former spouse's receipt of military retirement benefits terminates on the service member's death. Where a military spouse is awarded a share of a service member's retirement benefits in a dissolution decree, but the decree is silent as to the former spouse's rights under the SBP program, we believe the most reasonable inference is that no SBP benefits were awarded, and that the service member is not required to undertake any action to acquire such benefits for the former spouse.[12] We note that in multiple prior Missouri cases, dissolution decrees expressly required a service member to provide SBP coverage to his or her former spouse;[13] such an explicit order is the

---

**11.** A service member may elect to purchase an SBP annuity for less than the maximum amount of available survivor benefits. *See* 10 U.S.C. § 1447(6)(C); *Garner v. Hubbs*, 17 S.W.3d 922, 928 (Mo.App. S.D.2000) (dissolution decree required husband to elect SBP benefits for former spouse only with respect to a "reduced base amount"); Higdon, *supra* note 4, at 450–51 (providing example of judgment language requiring purchase of only a reduced annuity for a former spouse). Where an SBP election is ordered, it may be necessary to order a service member to elect SBP coverage for only a reduced base amount reflecting the portion of military retirement benefits awarded to the non-service member spouse in the dissolution decree, to avoid the sort of "windfall" problem addressed in *Wells*, 998 S.W.2d at 167–68. *See supra* note 6.

**12.** Courts in other States have reached different results concerning this issue. *Compare In re Marriage of Hayes*, 228 Or.App. 555, 208 P.3d 1046, 1048, 1053–54 (2009) (where dissolution judgment awarded wife "a percentage interest of [husband's] Military Retirement Benefit Plan," trial court lacked authority to enter QDRO requiring husband to designate wife as SBP beneficiary); *Williams v. Williams*, 37 So.3d 1196, 1200–02 (Miss. App.2009) (similar); *Padot v. Padot*, 891 So.2d 1079, 1085 (Fla.App.2004) (similar),

with *Buchanan v. Buchanan*, 150 Wash.App. 730, 207 P.3d 478, 481–82 (2009) (where dissolution judgment was silent as to survivor benefits, trial court had discretion to enter post-judgment order requiring husband to designate wife as SBP beneficiary, because right to participate in Survivor Benefit Plan was undistributed marital property); *In re Smith*, 148 Cal.App.4th 1115, 56 Cal.Rptr.3d 341, 346–49 (2007) (where dissolution decree provided that husband's "U.S. Army retirement shall be divided," trial court had discretion to enter post-judgment order requiring that wife be designated as SBP beneficiary, to "insure[] that [wife] would not be deprived of her interest in the retirement if [husband] predeceases her"); *see also In re Marriage of Morris*, 810 N.W.2d 880, 886–87 (Iowa 2012) (finding dissolution judgment awarding wife "half the Marine Corps Retirement" to be ambiguous, and remanding case to trial court "to determine the court's intent as to survivor benefits in the 2003 decree"); Sullivan, *supra* note 10, at 582–92 (collecting cases).

**13.** *See, e.g., Gurtz v. Gurtz*, 186 S.W.3d 435, 437 (Mo.App. S.D.2006) (dissolution decree required the husband to "provide [a] Survivor Benefits Plan designating [Wife] as the beneficiary on said [military] retirement"); *Garner*, 17 S.W.3d at 925 (settlement agreement re-

appropriate method to require an election of SBP coverage for a former spouse.

To be clear, in this case we are interpreting a dissolution decree which is silent concerning SBP participation; the decree simply awards Wife a share of Husband's military retirement benefits. We hold only that, in the face of a decree which fails to address SBP benefits, no such benefits can be ordered by a subsequent QDRO. Nothing in this opinion *prevents* a trial court from ordering that a former spouse be designated as a service member's beneficiary for purposes of SBP coverage. The trial court retains considerable discretion to formulate a dissolution decree that is equitable in the circumstances of a particular case.[14]

## Conclusion

The circuit court's judgment is affirmed.

All concur.

quired husband to "elect coverage under the plan" to provide wife with her proportionate share of the SBP, to designate wife as "former spouse" beneficiary, and to provide a commercial annuity if he failed "to make a timely election of SBP"); *Strassner*, 895 S.W.2d at 616 ("In its decree, as amended, the trial court ordered husband to continue to elect wife as sole beneficiary of husband's Survivor Benefit Plan (SBP) with the premiums to be deducted from husband's military pay."); *Starrett*, 703 S.W.2d at 546 (husband ordered to retain the military survivor benefit plan so that should he predecease wife, she shall continue to receive such benefits during her lifetime).

14. The availability of an SBP annuity which continues a portion of military retirement benefit payments following the service member's death is not a separate property interest, which must be addressed in order to make the division of marital property in a dissolution decree complete and final. Instead, SBP benefits are simply a feature of the retirement benefits a service member earns during their military service, and in the absence of an affirmative election or court order, such benefits never come into existence with respect to a former spouse.